# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BLUETRITON BRANDS, INC.,

      *Plaintiff*,

v.

UNITED STATES FOREST SERVICE,
RANDY MOORE, in his official capacity
as Chief of the United States Forest Service,
CHRISTOPHER FRENCH, in his official
capacity as Deputy Chief for the National
Forest System of the United States Forest
Service, JENNIFER EBERLEIN, in her
official capacity as Regional Forester for
the Pacific Southwest Region of the United
States Forest Service, DANELLE
HARRISON, in her official capacity as
Forest Supervisor of the San Bernardino
National Forest of the United States Forest
Service, and MICHAEL NOBLES, in his
official capacity as Front Country District
Ranger of the United States Forest Service,

      *Defendants.*

Case No. 1:24-cv-2302

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. iii

INTRODUCTION ............................................................................................... 1

BACKGROUND.................................................................................................. 2

I.    Arrowhead Spring Water ........................................................................ 2

II.   BlueTriton's Historic Rights to Arrowhead Springs................................. 4

III.  The Creation of SBNF Does Not Disturb BlueTriton's Rights................. 6

IV.   The Forest Service Recognized BlueTriton's Rights for Decades ............ 8

V.    The State Board Assesses BlueTriton's Rights........................................10

VI.   Forest Service Denies BlueTriton's Application to Renew Permit...........11

STANDARD OF REVIEW .................................................................................16

ARGUMENT.....................................................................................................17

I.    BlueTriton Is Likely to Succeed on the Merits .......................................17

      A.    The Forest Service Lacks Statutory Authority to Eliminate BlueTriton's
            Access to its Vested Water Rights ................................................18

      B.    The Forest Service Has Failed to Engage in Reasoned Decisionmaking.......20

            1.    The Forest Service has not explained its claim that it enjoys
                  superior right to the water at Arrowhead Springs..............................20

            2.    The Forest Service has not explained its conclusion that
                  BlueTriton's collections at Arrowhead Springs deprive the
                  Forest Service of water necessary to meet the needs of the
                  SBNF..........................................................................................22

      C.    The Notice of Denial Reflects an Unexplained Change in Position..............23

II.   BlueTriton Will Suffer Irreparable Harm Unless the Court Preliminarily
      Enjoins the Notice of Denial ...................................................................24

      A.    The Significant Impact on BlueTriton's Business........................................24

III.  The Balance of Equities and the Public Interest Favor Issuing a Preliminary
      Injunction.................................................................................................26

IV.    Plaintiff Should Not Be Required to Post a Bond ....................................................28

CONCLUSION ...........................................................................................................29

TABLE OF EXHIBITS ................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aamer v. Obama,*
   742 F.3d 1023 (D.C. Cir. 2014)...................................................................16

*Abdullah v. Obama,*
   753 F.3d 193 (D.C. Cir. 2014) ....................................................................17

*Adams v. United States,*
   3 F.3d 1254 (9th Cir. 1993)......................................................................6, 19

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
   522 U.S. 359 (1998)......................................................................................20

*BNSF Ry. Co. v. Surface Transp. Bd.,*
   741 F.3d 163 (D.C. Cir. 2014) ....................................................................21

*Cal. Or. Power Co. v. Beaver Portland Cement Co.,*
   295 U.S. 142 (1935)........................................................................................ 6

*Cappaert v. United States,*
   426 U.S. 128 (1976)....................................................................................6, 19

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ....................................................................24

*City of Pasadena v. City of Alhambra,*
   33 Cal. 2d 908 (1949) ..................................................................................13

*Cnty. of Okanogan v. Nat'l Marine Fisheries Serv.,*
   347 F.3d 1081 (9th Cir. 2003) ...................................................................... 8

*Coachella Music Festival, LLC v. Johnson,*
   No. 23-cv-288 (RBW), 2024 WL 1485947 (D.D.C. Apr. 4, 2024) ...............17

*Davis v. Pension Ben. Guar. Corp.,*
   571 F.3d 1288 (D.C. Cir. 2009)....................................................................17

*Del. Dep't of Nat. Res. & Envtl. Control v. EPA,*
   785 F.3d 1 (D.C. Cir. 2015)..........................................................................21

*Del Rosa Mut. Water Co. v. D.J. Carpenter, et al.,*
   No. 31798, slip op. (San Bernardino Cty. Sup. Ct. 1931) .................. 4, 5, 8, 11

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ....................................................................... 18, 23

*Dist. Hosp. Partners, L.P. v. Burwell*,
    786 F.3d 46 (D.C. Cir. 2015) ................................................................21

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ........................................................................18

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...........................................................................23

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
    636 F.2d 755 (D.C. Cir. 1980) .............................................................28

*Fund for Animals v. Babbitt*,
    903 F. Supp. 96 (D.D.C. 1995) ...........................................................17

*Irwin v. Phillips*,
    5 Cal. 140 (1855) .............................................................................. 4

*Katz v. Walkinshaw*,
    141 Cal. 116 (1903) ...........................................................................14

*Lodi v. E. Bay Mun. Util. Dist.*,
    7 Cal. 2d 316 (1936) ..........................................................................14

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ...........................................................................18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .............................................................................17

*Nat'l Fuel Gas Supply Corp. v. FERC*,
    468 F.3d 831 (D.C. Cir. 2006) .............................................................20

*Nat'l Res. Def. Council, Inc. v. Morton*,
    337 F. Supp. 167 (D.D.C. 1971) .........................................................28

*Nken v. Holder*,
    556 U.S. 418 (2009) ...........................................................................26

*Peabody v. Vallejo*,
    2 Cal. 2d 351 (1935) ..........................................................................14

*Qualls v. Rumsfeld*,
    357 F. Supp. 2d 274 (D.D.C. 2005) ....................................................17

*R.I.L-R v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ....................................................................17

*Sherley v. Sebelius,*
    610 F.3d 69 (D.C. Cir. 2010) ..........................................................................24

*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ........................................................................16

*Sierra Club v. Salazar,*
    177 F. Supp. 3d 512 (D.D.C. 2016) ............................................................20, 21

*Tripoli Rocketry Ass'n v. ATF,*
    437 F.3d 75 (D.C. Cir. 2006) ..........................................................................20

*United States v. New Mexico,*
    438 U.S. 696 (1978) ......................................................................................... 6

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................17

**Statutes**

5 U.S.C. § 706 ......................................................................................................17

16 U.S.C. § 481 ...................................................................................................5, 7

16 U.S.C. § 1604(i) ................................................................................................ 8

43 U.S.C. § 661 ............................................................................................. 1, 6, 19

43 U.S.C. § 1765(a) ............................................................................................... 7

16 Stat. 217 (July 9, 1870) ..................................................................................... 6

27 Stat. 1068 No. 48 (Feb. 25, 1893) ................................................................7, 19

Pub. L. No. 94-579, § 701(g), (h), 90 Stat. 2743 (1976) ....................................... 7

Cal. Civ. Code §§ 1410-1415 (1872) .................................................................... 4

Cal. Water Code § 1200, *et seq.*........................................................................11

**Other Authorities**

*Ctr. for Biological Diversity v. U.S. Forest Serv.,*
    No. 15-cv-02098 (C.D. Cal., filed Oct. 13, 2015), ECF No. 28-1 .................... 9

U.S. Forest Serv. Watershed & Air Mgmt. Manual, FSM 2500 at § 2541.1
(Sept. 4, 2007), *available at* https://tinyurl.com/2s4dyzen ............................................ 7

U.S. Forest Serv., *Report of the Federal Water Rights Task Force Created Pursuant
to Section 389(D)(3) of P.L. 104-127*, Part VI Forest Service Legal Authority
(Aug. 25, 1997), *available at* https://tinyurl.com/4hwp3fdp ......................................... 8

## INTRODUCTION

For more than 150 years, Plaintiff BlueTriton Brands, Inc. and its predecessors (collectively, "BlueTriton")  have enjoyed vested rights under California law to the water that percolates at Arrowhead Springs in Strawberry Canyon, in the foothills of the San Bernardino Mountains.  BlueTriton has put that water to various beneficial uses throughout that period, including as bottled drinking water sold under the Arrowhead® Mountain Spring Water brand, and as drinking, domestic, firefighting, and irrigation water that BlueTriton supplies to the neighboring San Manuel Band of Mission Indians ("San Manuel Band") and its predecessors.

In 1893, years after BlueTriton's rights vested, President Benjamin Harrison reserved the San Bernardino National Forest (SBNF), which includes Strawberry Canyon, under the recently-enacted Forest Reserve Act.   That reservation did not impair BlueTriton's rights, which had vested by that point.  Federal reservations of land only reserve to the United States a right to water not already appropriated.  Federal law expressly protects the rights of those claiming existing water appropriations.  Those rights "shall be maintained and protected," and the right to construct conduits to facilities to access and transport the water "is acknowledged and confirmed."  43 U.S.C. § 661.

Naturally, BlueTriton and its predecessors must cross SBNF land to access Arrowhead Springs.  So, since 1930, BlueTriton has sought, and the United States Forest Service ("Forest Service") has issued, special use permits that set conditions on BlueTriton's use of SBNF land to access its water.  Throughout that time, the Forest Service repeatedly and consistently acknowledged BlueTriton's right to the water at Arrowhead Springs.

That all changed on Saturday, July 27, 2024.  For the first time *ever*, the Forest Service purported to eliminate BlueTriton's access to its water and ordered BlueTriton to remove its pipeline infrastructure, which it had installed and maintained over decades at scores of millions of dollars in expense.  Contrary to federal statutory law that recognizes the primacy of water rights acquired under State law and more than a century of consistent practice, the Forest Service now appears to claim that it owns BlueTriton's water, may choose who uses that water, and may prevent BlueTriton from using it at all.

BlueTriton filed this suit to set aside the agency's action, which is plainly unlawful. The Forest Service's Notice of Denial mandates that BlueTriton immediately cease collecting water and remove infrastructure for collecting the water installed over decades at great expense.  But the Forest Service lacks authority to prevent BlueTriton from accessing and collecting its water.  BlueTriton respectfully requests this Court preliminarily enjoin the Forest Service's Notice of Denial in its entirety, because in the absence of an injunction, BlueTriton must either defy the Notice of Denial (and risk an enforcement action) or comply and incur millions of dollars in unrecoverable expense to remove and then re-install its pipeline and associated equipment, while losing any revenue it derives from selling its water and suffering impairment to its valuable Arrowhead brand.  Either path will cause BlueTriton irreparable harm.  The Court should promptly enjoin the Forest Service's unlawful order pending the outcome of this lawsuit.

## BACKGROUND

## I.    Arrowhead Spring Water

In the upper reaches of Strawberry Canyon, near San Bernardino, California, groundwater seeps to the ground's surface in an area known as the "Arrowhead Springs."

Today, BlueTriton's Arrowhead Springs sources consist of roughly a dozen fractures and fissures in Strawberry Canyon where tunnels or boreholes allow the collection of water that percolates to the surface.[1]  Groundwater reaches the surface at each of these sites through natural forces such as gravity and subsurface water pressure —it is not pumped.

Since the 1880s, BlueTriton has established and maintained the right to appropriate water from the springs and the surrounding Strawberry Canyon drainage for a variety of beneficial uses, including sale as drinking water in Los Angeles and beyond.[2]  In the 1930s, BlueTriton's predecessor installed and later expanded a steel pipeline to transport water from its source.  Ever since, BlueTriton has maintained, upgraded, and continued to use that pipeline.[3]

Historically, BlueTriton has bottled and sold the water from Arrowhead Springs under the Arrowhead Mountain Spring Water brand, a popular brand of bottled water in California.  BlueTriton also supplies a minimum of 20% of the flow out of Arrowhead Springs to the neighboring San Manuel Band of Mission Indians, under a contract dating back to the 1930s.  The San Manuel Band uses the water for domestic purposes, fire suppression, and irrigation at the Arrowhead Springs Hotel property, just outside the SBNF, where it operates various tribal government and business offices.

The volume of water delivered from Arrowhead Springs has varied.  Because the springs are a naturally occurring source, the amount of water they provide naturally fluctuates based on precipitation, hydrology, hydraulics, and field conditions.  On top of

---

[1] Ex. 1, Declaration of Lewis W. Mixon ¶9.
[2] *See generally* Ex. 2, Memorandum from Rita P. Maguire to Natalie Stork (July 11, 2016) (describing the history of BlueTriton's water rights at Arrowhead Springs).
[3] *Id.*

that, exogenous factors sometimes affect the amount of water delivered from the springs. For example, over the past decade, production has been affected by various shut-in tests conducted to perform studies in coordination with the Forest Service's requests for data, and by measures taken in connection with State regulatory action. But the end uses have remained unchanged—BlueTriton has beneficially used the water to produce bottled water, and it has delivered water for use at the Arrowhead Springs Hotel property.

## II.    BlueTriton's Historic Rights to Arrowhead Springs

BlueTriton's predecessors first claimed rights to the water in Strawberry Canyon in 1864. Under California law at the time, water appropriations were made on a first-in-time basis. A party claiming water rights would file a notice with the local county recorder's office describing its appropriation, which put other potential appropriators on notice of the party's priority to the claim. Cal. Civ. Code §§ 1410-1415 (1872); *see also Irwin v. Phillips*, 5 Cal. 140, 141 (1855) (observing "the rule of time is the rule of right; and the first taker is to be protected in his entry and possession"). BlueTriton's predecessor, David Noble Smith, did just that, recording a possessory claim on March 21, 1865.[4]

Six decades later, that claim withstood legal challenge. By the late 1920s, Mr. Smith's claim had passed to Arrowhead Springs Corporation (ASC), which then transferred most of those rights to California Consolidated Water Company (CCWC) in a series of transactions between 1929 and 1931. Around that time, a downstream user, the Del Rosa Mutual Water Company, disputed the rights claimed by ASC and CCWC, and sued them in State court. *See Del Rosa Mut. Water Co. v. D.J. Carpenter, et al.*, No. 31798, slip op. at 10-

---

[4] Ex. 3, Report of Pioneer Title Ins. & Tr. Co. (Sept. 23, 1930). Mr. Smith later recorded a patent on the claim. *Id.*

11 (San Bernardino Cty. Sup. Ct. 1931).  That court ultimately found that ASC and CCWC had valid claim to "any and all of the water of all springs situated or obtainable" in "Strawberry Creek and Canyon and canyons lateral thereto."[5]  The court specifically recognized the right of ASC and CCWC to all the waters of Strawberry Creek and to "develop, by means of tunnels or . . . pipe line" all springs or water situated in the upstream area and "to take and transport [such water]. . . out of [the] watershed for bottling or other purposes…."  The court expressly based this finding on the fact that these appropriative rights had been put to continuous, beneficial use "*for more than fifty (50) years.*"[6]

The 1931 judgment is significant here for two reasons.  First, and most obviously, it confirms BlueTriton's claim under State law to the water at Arrowhead Springs in Strawberry Canyon.  Water rights within national forests derive from State law, 16 U.S.C. § 481, a point the Forest Service has expressly (and repeatedly) acknowledged.[7]  Second, it shows that BlueTriton is uniquely situated in that it can back up its claim with a formal adjudication.[8]

---

[5] Ex. 4, Judgment, *Del Rosa Mut. Water Co. v. D.J. Carpenter, et al.*, No. 31798, slip op. at 10-11 (San Bernardino Cty. Sup. Ct. 1931).

[6] *Id.* at 6, 11 (emphasis added).  In 2016, BlueTriton provided the Forest Service with a comprehensive description of the chain of title from CCWC to Nestle Waters North America, Inc. (NWNA).  *See* Ex. 5, Chain of Title for Arrowhead Water Rights and SUP (without exhibits).  In 2021, NWNA changed its corporate name to "BlueTriton Brands, Inc."  Ex. 6, Am. Statement by Foreign Corp. (filed May 5, 2021).

[7] Ex. 7, Memorandum from District Ranger Kenton P. Clark to SBNF Forest Supervisor (Aug. 28, 1964), at ¶20 ("This permit confers no rights upon the permittee for the use of the water involved.  Such rights are obtained and retained under applicable State Law.").

[8] Ex. 8,  Memorandum from District Ranger Kenton P. Clark to SBNF Forest Supervisor (Apr. 20, 1964), ¶3 ("This application [by BlueTriton's predecessor] involves one of the few water rights that was actually contested and it would appear to be more firm as a result of the adjudication.").

**III.    The Creation of SBNF Does Not Disturb BlueTriton's Rights.**

The San Bernardino National Forest came along in 1893, but nothing in the legislation authorizing that reservation or any of the subsequent legislation that now governs national forests impairs existing rights under State law.

As a general matter, federal reservations or transfers of land do not disturb existing appropriations of water rights recognized under State law.  *See generally Cal. Or. Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935) (explaining derivation and codification of water rights in semi-arid western states).  In the Mining Act of 1866, Congress codified what had become the common law rule in the west at the time—that the "first appropriator" of water for beneficial use retained superior claim to the resource, along with an implied right of way to transport the water from source to end use.  43 U.S.C. § 661.  In 1870, Congress clarified that these rights are durable.  *See* Act of July 9, 1870, 16 Stat. 217, 218.  So any subsequent transfer of land by the federal government would be servient to private appropriations and associated rights of way.  *See Cal. Or. Power*, 295 U.S. at 153-54; *Adams v. United States*, 3 F.3d 1254, 1260 (9th Cir. 1993).

This general rule applies when the Government reserves land, for example, by creating a national forest.  "[W]hen the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water *then unappropriated* to the extent needed to accomplish the purpose of the reservation."  *Cappaert v. United States*, 426 U.S. 128, 138 (1976) (emphasis added); *see also United States v. New Mexico*, 438 U.S. 696 (1978) (discussing limits of reserved rights doctrine).  Already appropriated waters are unaffected by the federal reservation.

So as a starting point, BlueTriton's appropriation of water rights in Strawberry Canyon in the mid-1860s precluded any federal appropriation when the SBNF was created in 1893.  And no federal law regarding national forests or federal land management purports to change any of that.  The proclamation creating the SBNF lays no claim to private water rights.  Proclamation No. 48, 27 Stat. 1068 (Feb. 25, 1893).  And to the extent that proclamation speaks to the issue at all, it excepts from its reservation existing lawful claims.  *Id.* 27 Stat. at 1069.

The Organic Act of 1897, which provides the primary statutory basis for the administration of national forests, also salutes the primacy of existing rights appurtenant to forest land: "All waters within the boundaries of national forests may be used for domestic, mining, milling, or irrigation purposes, *under the laws of the State* . . . ."  16 U.S.C. § 481 (emphasis added).  And in accord with this provision, Forest Service guidance instructs forest managers to go acquire, pursuant to State law, whatever water is necessary to manage the forest.[9]  If the Organic Act gave the Forest Service full right to all water found in national forests, this instruction would be unnecessary.

The 1976 Federal Land Policy and Management Act (FLPMA), which authorizes the Forest Service to issue special use permits, *see* 43 U.S.C. § 1765(a), is similar.  It expressly states, "[n]othing in this Act . . . shall be construed as terminating any valid . . . right-of-way, or other land use right or authorization existing on the date of approval of this Act," and that "all actions by the Secretary concerned under this Act shall be subject to *valid existing rights*."  Pub. L. No. 94-579, § 701(g), (h), 90 Stat. 2743 (1976) (emphasis added);

---

[9] U.S. Forest Serv. Watershed & Air Mgmt. Manual, FSM 2500 at § 2541.1 (Sept. 4, 2007), *available at* https://tinyurl.com/2s4dyzen.

*Cnty. of Okanogan v. Nat'l Marine Fisheries Serv.*, 347 F.3d 1081, 1085 (9th Cir. 2003) ("[T]he government could not under the FLPMA divest a private party of an existing 'land use right' or other 'valid existing rights.'").  Indeed, citing these very provisions, a Federal Water Rights Task Force concluded that FLPMA could not be used in "any manner that would interfere with the diversion and use of water allocated to and owned by non-federal water users under state laws, or to interfere with state water allocation and administration systems."[10]

The National Forest Management Act (NFMA), also passed in 1976, is the same. That legislation generally authorizes the Forest Service to develop land use plans for individual forest units, and it broadly requires that special use permits be consistent with those land use plans.  *See* 16 U.S.C. § 1604(i).  But that same statutory provision expressly disclaims any intent to affect "valid existing rights."  *Id.* ("Any revision in present or future permits, contracts, and other instruments made pursuant to this section shall be subject to valid existing rights.").

## IV.   The Forest Service Recognized BlueTriton's Rights for Decades.

For decades, the Forest Service consistently recognized BlueTriton's superior right to the water at Arrowhead Springs.  In 1964, for example, the Forest Service acknowledged that "any water rights in California are applied for and held by applicable state law," and the 1931 judgment in *Del Rosa Mutual Water Co.* conclusively established BlueTriton's right to the water percolating at Arrowhead Springs under California law.[11]  At the time, the

---

[10] U.S. Forest Serv., *Report of the Federal Water Rights Task Force Created Pursuant to Section 389(D)(3) of P.L. 104-127*, Part VI - Forest Service Legal Authority (Aug. 25, 1997), *available at* https://tinyurl.com/4hwp3fdp.

[11] Ex. 8 at ¶3.

Forest Service expressly conceded it "has never held any water rights in [the Arrowhead Springs] drainage."[12] As recently as 2016, the Forest Service explained in a federal court filing, "Since the 1890s, Arrowhead Puritas Waters, Inc., which through a series of mergers and name changes is now part of Nestlé Waters North America Inc. [now BlueTriton Brands, Inc.], and its predecessors have been exercising their water rights under State law by extracting and transmitting water from and across the San Bernardino National Forest."[13]

Consistent with its obligations under federal law, the Forest Service repeatedly issued permits to BlueTriton imposing conditions on BlueTriton's use of a right-of-way covering an approximately 4.51 acre area to access BlueTriton's water.  The agency first issued such a permit in 1930, and reissued permits in 1931, 1934, 1946, 1960, 1976, 1978, and 2018 (the latter of which was renewed in 2022 and 2023).  These permits regulate only the use of the right of way and expressly disclaim any authority to confer water rights.[14]  The permits themselves have never claimed any water right on behalf of the federal Government, capped the amount of water BlueTriton can collect, or specified the uses to which BlueTriton or its customers may put the water.

In connection with the 2018 permit renewal, the Forest Service asked BlueTriton to develop an adaptive management plan, which would include hydrologic studies and a "paired basin study" to better understand how BlueTriton's collection of water at Arrowhead Springs affects the environment and water resources within the SBNF.

---

[12] *Id.*

[13] Fed. Def.'s Br. in Support of Summ. J., at 2, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 15-cv-02098 (C.D. Cal., filed Oct. 13, 2015), ECF No. 28-1 (citing Fed. Def.'s Statement of Undisputed Facts).

[14] *See, e.g.,* Ex. 9, U.S. Forest Serv. Special Use Permit No. FCD728501 at VIII.H. (Aug. 24, 2018).

BlueTriton objected to these requirements and any other permit terms that might suggest the Forest Service had superior right to the water under California law.[15]  The Forest Service stopped short of affirmatively claiming superior right to Arrowhead Springs and instead deferred to the potential outcome of proceedings before the California State Water Resources Control Board (the "State Board") addressing BlueTriton's water rights.[16] BlueTriton agreed to voluntarily develop the adaptive management plan and conduct hydrologic and the paired-basin studies, while maintaining its objection to any Forest Service infringement of its water rights.  The results of these studies were submitted to the Forest Service and showed that BlueTriton's collection at Arrowhead Springs had no measurable effect on the flow in Strawberry Creek; no effect on other water sources outside of Strawberry Canyon; and no impairment of Strawberry Canyon when compared to adjacent canyons.[17]  The Forest Service has never addressed the results of these studies with BlueTriton.

## V.     The State Board Assesses BlueTriton's Rights.

In 2015, in response to complaints by private environmental groups, the California State Water Resources Control Board began to investigate BlueTriton's water rights at Arrowhead Springs.  The investigation led to a misguided 2023 administrative order that has been subsequently stayed by State courts, pending a decision on the merits.  Since 1914, the State Board and its predecessor have had the authority to permit appropriation of surface water flowing in streams and natural channels; the State Water Board does not have

---

[15] Ex. 10, Letter from Larry Lawrence to District Ranger Joseph Rechsteiner (Aug. 24, 2018).
[16] Ex. 11, U.S. Forest Serv. Decision Memo at 21-23 (June 27, 2018).
[17] Ex. 12, Memorandum from Haley & Aldrich, Inc. to BlueTriton Brands, Inc. (July 16, 2024).

jurisdiction over surface water appropriated prior to 1914, or over percolating groundwater (such as at Arrowhead Springs).[18]   But in April 2023, an administrative hearing officer (AHO) asserted an unprecedented theory that groundwater percolating to the surface constitutes surface water if it could hypothetically flow into a surface channel.  And, contrary to the *Del Rosa* decision, the AHO further proposed to find that BlueTriton's predecessors had not appropriated the Arrowhead Springs water as of 1914, and on that basis, the AHO found that BlueTriton had also failed to obtain the necessary permit from the State Board.  The AHO generally proposed to restrict BlueTriton's rights to most of BlueTriton's sources at Arrowhead Springs, but allowed diversion of an amount of water from those affected sources necessary to meet the needs of the San Manuel Band at its Arrowhead Springs Hotel property.  The Order did not restrict BlueTriton's collections from the unaffected sources at Arrowhead Springs.  On September 19, 2023, the State Board adopted the AHO's proposed order ("Order").[19]

BlueTriton immediately sought judicial review and thereafter moved for a stay of the Order.  The reviewing state court stayed the Order in January 2024, and that case remains pending.

## VI.   Forest Service Denies BlueTriton's Application to Renew Permit.

BlueTriton sought to renew its special use permit in 2023, as it had many times since 1930.  The agency did nothing with the application for many months.  After the State Board issued its decision, the Forest Service began processing the renewal application, and it began asking BlueTriton how it planned to comply with the State Board's Order, in particular the

---

[18] *See* Cal. Water Code § 1200, *et seq.*
[19] Ex. 13, State Water Resources Control Board, Order WR 2023-0042 at 89-92 (Sept. 19, 2023).

general limitation on collections to only the amount necessary to satisfy the San Manuel Band's water needs.[20]  Those lines of inquiry became immaterial when the California court stayed the Order in January 2024.  Undeterred, the Forest Service continued to press for this information using different justifications.

First, the Forest Service claimed—for the first time ever as to the current permit or any of its predecessors—that the 2023 permit restricted how either BlueTriton or its contractual partner, the San Manuel Band, could use the water collected.  Pointing to boilerplate permit language that generally prohibits BlueTriton from developing a new diversion point or pipeline without authorization, the Forest Service claimed that the permit restricted BlueTriton's volumes and delivery points, and—incredibly—required BlueTriton to provide data showing precisely how much water the San Manuel Band used for each specific beneficial use after delivery, and precisely where such amounts were put to beneficial use.[21]  The Forest Service then declared—incorrectly—that BlueTriton was in violation of these provisions, because "[c]learly BTB is now delivering water in different volumes, to different locations, for different uses than when the permit was issued."[22]

BlueTriton promptly corrected the Forest Service's misunderstanding of the permit's terms and BlueTriton's operations.  BlueTriton reminded the Forest Service that the permit "does not govern [BlueTriton]'s specific beneficial uses of water, the locations of such uses, or the recipients of such water deliveries."  Instead, the permit only purports to authorize and condition "[BlueTriton]'s use or occupancy of 4.51 acres of land in the [SBNF] for the

---

[20] *See, e.g.,* Ex. 14, Letter from District Ranger Michael Nobles to David Feckley (Sept. 29, 2023).
[21] Ex. 15, Letter from District Ranger Michael Nobles to Lewis Mixon (Mar. 1, 2024).
[22] *Id.* at 1.

purpose of operating and maintaining [BlueTriton]'s water collection and transmission system (including tunnels, wells, vaults, pipelines, helicopter landing areas, and monitoring stations), as well as the use of 5.7 miles of access trails and USFS road 1N24."[23]  And the claim that BlueTriton is now delivering water to different locations or for different uses is just wrong:  "[T]here has been no change in locations of use, beneficial uses, or recipients of water deliveries."[24]  The Forest Service responded the very next day to again reassert the right to know where the water BlueTriton is collecting is being used after it leaves the SBNF.[25]  In any event, BlueTriton requested that information from the San Manuel Band, which provided the information readily available to it and that information was, in turn, provided to the Forest Service.[26]

        Second, the Forest Service suggested—for the first time ever—that water drawn from Arrowhead Springs in the SBNF belongs to the federal Government.  In his May 24, 2024, letter, the District Ranger proclaimed, unconstrained by citation to any legal authority, "[t]he water groundwater rights remain with the United States and are used permissively."[27]  That claim appears to be premised on some relevant legal or factual distinction between groundwater and surface water.  But there is none.  Groundwater can be appropriated just the same as surface water, *see City of Pasadena v. City of Alhambra*, 33 Cal. 2d 908, 925 (1949),

---

[23] Ex. 16, Letter from Lewis Mixon to District Ranger Michael Nobles (Apr. 23, 2024), at 1.

[24] *Id.*

[25] Ex. 17, Letter from District Ranger Michael Nobles to Lewis Mixon (Apr. 24, 2024).

[26] The San Manuel Band has not installed specialized metering equipment in excess of that required by California law, however, so it could not provide information at the unprecedented level of specificity that the Forest Service had requested.  Ex. 18, Letter from Lewis Mixon to District Ranger Michael Nobles, Att. 1 Ex. C (May 14, 2024).

[27] Ex. 19, Letter from District Ranger Michael Nobles to Lewis Mixon (May 24, 2024), at 1.

and overwhelming evidence demonstrates that BlueTriton appropriated *all* water, ground or

surface, in Strawberry Canyon before the creation of the SBNF.  And even if surplus water

at Arrowhead Springs were available to the Forest Service as an overlying landowner, it is

entitled only to the amount it reasonably and beneficially uses.  Under California law,

overlying landowners do not enjoy an absolute right to groundwater under their property

and cannot preclude appropriations of groundwater without a showing of injury to

overlying uses. *See, e.g., Peabody v. Vallejo,* 2 Cal. 2d 351, 372 (1935); *Lodi v. E. Bay Mun. Util.*

*Dist.* 7 Cal. 2d 316, 338-343 (1936); *Katz v. Walkinshaw* 141 Cal. 116, 135 (1903).  In a June

4, 2024, letter, BlueTriton explained all these points.[28]  The Forest Service responded to that

letter on June 21, 2024, but did not attempt to rebut any of BlueTriton's points regarding its

appropriative groundwater rights to the water at Arrowhead Springs.[29]

On Saturday, July 27, 2024, the Forest Service sent BlueTriton a notice that it had

denied BlueTriton's renewal application.[30]  The Notice of Denial also purports to place

immediate, full, and indefinite restrictions on BlueTriton's ability to rely on the right-of-way

identified in the permit and to prevent BlueTriton's access to its vested rights at Arrowhead

Springs.

The Notice of Denial identifies three reasons for the denial.  First, the Forest Service

claims the authority to regulate BlueTriton's appropriation under the Land Management

Plan for the SBNF.[31]  More specifically, the agency states that it can restrict BlueTriton's

---

[28] Ex. 20, Letter from Lewis Mixon to District Ranger Michael Nobles (June 4, 2024).

[29] Ex. 21, Letter from District Ranger Michael Nobles to Lewis Mixon (June 21, 2024).

[30] Ex. 22, U.S. Forest Serv., *Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503* (the "Notice of Denial").

[31] *Id.* at 1-2.

access to the water at Arrowhead Springs to only that amount which exceeds the "needs of

the forest." Without specifying what that amount is or where the purported need is located,

and ignoring the comprehensive environmental and hydrological studies that BlueTriton has

performed for the Forest Service over the last decade, the Forest Service states that

BlueTriton's collections exceed the "needs of the forest." The Forest Service then finds

fault with the sufficiency of the information BlueTriton provided in support of its

application, because BlueTriton had not described to the Forest Service's satisfaction the

uses of the waters collected at Arrowhead Springs to allow the Forest Service to

independently ensure those uses comply with California law.[32]

Second, the Forest Service concluded that BlueTriton's use of its water was not

appropriate. The Forest Service noted that BlueTriton's "reporting shows that 94-98% of

the total monthly volume" was delivered to San Manuel Band for use at the Arrowhead

Springs Hotel property. Even though BlueTriton has delivered water to the Hotel property

for decades under a recorded contract that is publicly available, and even though the high

proportion of water delivered to the Tribe was readily explained by exogenous factors,[33] the

Forest Service claimed the right to decide for itself whether the delivery of this proportion of

water was acceptable.

Third, the Forest Service boldly claimed that defined uses and locations of delivery

for BlueTriton's water were conditions of the existing permit, and that BlueTriton violated

---

[32] *Id.* at 2.
[33] The State Board's Order forced BlueTriton to curtail all deliveries from the affected sources, other than those made to the San Manuel Band. And before that, BlueTriton curtailed production at the Forest Service's request to allow for a joint study of the aquifer. The State Board's Order has been stayed, but BlueTriton has not yet reverted to the use of Arrowhead Springs for bottled water over the alternative sources that it had put in place while the State Board's decision was in effect.

them.  The permit, of course, imposes no such condition, and BlueTriton is delivering water from Arrowhead Springs just as it had for nearly a century.  But the Forest Service nonetheless concluded that these deliveries constitute a "change in both the beneficial use of water and the location of that use," which in turn "constitutes a violation of the current permit and basis for termination" and "also provides independent reason to deny BlueTriton's application."[34]

The Notice of Denial orders BlueTriton to stop immediately "all use of Forest System lands, including the operation and maintenance of a water collection/water transmission system on USFS lands."[35]  The Notice of Denial further orders BlueTriton to stop using the pipeline, remove all security devices from pipeline facilities, and make a plan to remove the pipeline and all associated equipment.  The Forest Service subsequently stated that BlueTriton may continue to operate its system on a limited basis for an additional 30 days (through September 2, 2024), but only for purposes of delivering water to one of BlueTriton's customers: the San Manuel Band.

## STANDARD OF REVIEW

Plaintiffs seeking preliminary injunctive relief "must establish (1) that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)).  The party seeking an injunction must "show that all four factors, taken together, weigh in favor of the

---

[34] Ex. 22 at 3.
[35] *Id.*

16

injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)) (internal quotation marks omitted).[36]  Plaintiffs seeking preliminary injunctive relief "bear the burdens of production and persuasion," *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005), and may rely on credible evidence "that is less complete than in a trial on the merits," *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 173 (D.D.C. 2015) (citations omitted).

## ARGUMENT

### I.   BlueTriton Is Likely to Succeed on the Merits.

This Court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  Agency action is arbitrary and capricious if:

> [1] the agency has relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under this standard, "Court[s] consider[ ] whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C.

---

[36] Historically, "[t]he four factors have typically been evaluated on a sliding scale": "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor."  *Davis*, 571 F.3d at 1291-92 (internal quotation marks omitted).  The D.C. Circuit has not resolved whether the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) eliminates the sliding scale.  *See Coachella Music Festival, LLC v. Johnson*, No. 23-cv-288 (RBW), 2024 WL 1485947, *2 (D.D.C. Apr. 4, 2024).

1995) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).  In addition, when an agency changes position, "it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.'"  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016)).  The agency is "required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns."  *Id.* at 33.

A.    **The Forest Service Lacks Statutory Authority to Eliminate BlueTriton's Access to its Vested Water Rights.**

At the most basic level, an agency can act only within its statutory authority.  And the Forest Service lacks any authority to nullify BlueTriton's water rights or other property rights under State and federal law.  *See supra* at 6 – 8.

BlueTriton owns the right to the groundwater that it collects at Arrowhead Springs.  Its predecessor claimed that appropriative right in 1865 under California law,[37] a California court confirmed that right in 1931, and BlueTriton and its predecessors have put the water to beneficial uses since at least the 1880s.  The State Board erroneously recently concluded otherwise, but a reviewing State court stayed the State Board's Order, so it has no legal effect today, and it will likely be reversed.  In all events, the federal Government has never affirmatively claimed that it enjoys superior right to the water at Arrowhead Springs, let alone initiated appropriate proceedings in California to establish a superior right to Arrowhead Springs under California law.

---

[37] Ex. 3 at 0520.

When the federal Government reserved the SBNF in 1893, it did so subject to BlueTriton's preexisting vested rights.  Federal law, then and now, mandated that BlueTriton's rights be preserved, 43 U.S.C. § 661, as the proclamation reserving the SBNF itself acknowledged.  *See* 27 Stat. at 1069 (disclaiming any impairment of existing private rights).  So whatever water rights the federal Government acquired by implication when it created the SBNF, those rights do not include the water at Arrowhead Springs that BlueTriton had already appropriated.  *Cappaert*, 426 U.S. at 138.

Because BlueTriton has established and maintained its right to the water at Arrowhead Springs, the Forest Service must grant BlueTriton a right-of-way to access that water.  43 U.S.C. § 661; *see Adams*, 3 F.3d at 1260.  At most, the Forest Service may impose reasonable regulation on BlueTriton's use of that right-of-way.  But none of the statutes that authorize the Forest Service to manage the SBNF grants the agency the power to nullify BlueTriton's rights to the water under State law or its right to access the water under federal law.

The Notice of Denial does just that.  It purports to eliminate BlueTriton's right-of-way *and* requires removal of the infrastructure BlueTriton has developed over nearly a century to transport its water from Arrowhead Springs and out of the SBNF.  Whatever the Forest Service might do in the way of "reasonable regulation" of the pipeline right-of-way, *Adams*, 3 F.3d at 1260, it cannot outright eliminate BlueTriton's access to its lawfully appropriated water rights.  By claiming to do so in the Notice of Denial, the Forest Service has exceeded its statutory authority, and its action must be set aside.

**B.      The Forest Service Has Failed to Engage in Reasoned Decisionmaking.**

To survive review under the arbitrary and capricious standard, an agency must examine the relevant data and articulate "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75, 81 (D.C. Cir. 2006) (citation and internal quotation marks omitted). In other words, arbitrary and capricious review "establishes a scheme of reasoned decisionmaking." *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006) (internal quotation marks omitted) (citing *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).  Reasoned decisionmaking defies formulaic description, but it almost always involves deliberation, transparency, rationality, and evidentiary propriety.  *See Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 532 (D.D.C. 2016).

The Forest Service failed to demonstrate reasoned decisionmaking on two key points: (1) its unstated premise that it owns the water at Arrowhead Springs; and (2) the claim that BlueTriton's collections at Arrowhead Springs exceed "the needs of the Forest."

**1.      The Forest Service has not explained its claim that it enjoys superior right to the water at Arrowhead Springs.**

The unstated premise behind each of the bases for denying BlueTriton's permit renewal application is that the Forest Service has rights superior to those of BlueTriton as to the water percolating at Arrowhead Springs.  None of the bases the Forest Service articulates for its denial makes sense otherwise.  The Forest Service lacks any authority to regulate the uses of private water, and it cannot reserve for the "needs of the forest" water to which it lacks lawful claim under State law.  If, in fact, the Government is now affirmatively staking out any claim of right to the water, whether proprietary or as an overlying landowner, it needed to explain its decision and at least acknowledge that such a claim

constitutes a change from its previous positions in which it initially agreed BlueTriton enjoys superior right[38] and later indicated it would defer to relevant State authorities.[39]  Its silence on this central question renders its decision arbitrary and capricious.

First, the decision reflects no deliberation whatsoever regarding BlueTriton's claim to appropriative groundwater rights at Arrowhead Springs.  An agency must "engage the arguments raised before it,"[40] consider all "important aspect[s] of the problem,"[41] and "respond *meaningfully* to objections raised by a party."[42]   BlueTriton has articulated and rearticulated its ownership claim with the Forest Service for at least a century, including during the most recent permit renewal process.[43]  The Notice of Denial says *nothing* in response to those arguments.

Second, the Forest Service's justification for its apparent conclusion that it now has rights to Arrowhead Springs water is completely opaque.  The Forest Service has not even bothered to articulate the conclusion in its decision document, let alone explain its reasons.  That is not transparency.  *See Sierra Club*, 177 F. Supp. 3d at 533 (explaining what constitutes transparency in decisionmaking and collecting cases).  And it is particularly problematic here given the importance of this issue during the permit review process and the complexity of water rights under California law.

---

[38] *See, e.g.,* Ex. 8.

[39] *See, e.g.,* Ex. 11 at 23.

[40] *Del. Dep't of Nat. Res. & Envtl. Control v. EPA*, 785 F.3d 1, 11 (D.C. Cir. 2015) (citation and internal quotation marks omitted).

[41] *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) ((citation and internal quotation marks omitted).

[42] *BNSF Ry. Co. v. Surface Transp. Bd.*, 741 F.3d 163, 168 (D.C. Cir. 2014) (emphasis added) (citation and internal quotation marks omitted).

[43] *See, e.g.,* Ex. 20.

Finally, the Forest Service's decision about water rights must be supported by record evidence. But the overwhelming evidence before the Forest Service shows that BlueTriton has full rights to Arrowhead Springs.[44] The Forest Service might assert that the State Board's decision bolsters its position. But if the Forest Service's theory is based on the idea that BlueTriton is claiming groundwater somehow reserved to the Forest Service, the State Board's decision is immaterial, because it has been stayed and in any event hinges on the (misguided) theory that Arrowhead Springs is *not* groundwater.[45] What's more, the State Board's order only limited BlueTriton's collections from *some* of the Arrowhead Springs sources, leaving others unaffected. To the extent the Forest Service relies on the State Board's since-stayed decision, the Notice of Denial does not grapple with these apparent flaws and plain inconsistencies.

> **2.      The Forest Service has not explained its conclusion that BlueTriton's collections at Arrowhead Springs deprive the Forest Service of water necessary to meet the needs of the SBNF.**

Each of these flaws also infects the Forest Service's conclusion that BlueTriton's collection of water at Arrowhead Springs violates the SBNF's Land Management Plan, because it deprives the Forest Service of water necessary to meet "the current and reasonably foreseeable future needs of forest resources."[46] The Forest Service never explains its calculation of the amount of water needed to meet the needs of SBNF or where the purported needs of the SBNF are not being met, and thus fails to show deliberation or transparency. And the decision is contrary to the substantial evidence before the agency. The hydrologic and paired-basin studies that BlueTriton conducted at the Forest Service's

---

[44] *See, e.g.,* Exs. 2, 3, 4, 5.
[45] Ex. 13.
[46] Ex. 22 at 2.

behest show that BlueTriton's collection has no effect on stream flows or other conditions in Strawberry Creek, and does not reduce flow from the Forest Service's groundwater collection sites just outside of Strawberry Canyon.[47]

**C.    The Notice of Denial Reflects an Unexplained Change in Position.**

The Forest Service's failure to explain its claim of right to Arrowhead Springs is made worse by its failure to acknowledge that this claim is new and contrary to the position the agency has taken for nearly a century, including most recently in court filings in 2016.

When an agency changes course, it must understand the reliance interests its previous policy engendered. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). The agency must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Id.* at 33. When reliance interests are significant, an agency must provide a "more detailed justification" for its action. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Forest Service's decision does none of these things. As explained above, the Notice of Denial provides no explanation for the Forest Service's claim of right to the water at Arrowhead Springs. It fails to acknowledge its previous position on the issue. It pays no heed to BlueTriton's demonstrable reliance interests. And it offers no explanation for why those reliance interests must yield to the interests informing the Forest Service's new position. Indeed, the Forest Service gives *no* justification for its action, much less a "detailed" one.

---

[47] Ex. 12.

II.   **BlueTriton Will Suffer Irreparable Harm Unless the Court Preliminarily Enjoins the Notice of Denial.**

This Court must set aside the Forest Service's action if the action would cause irreparable harm to the moving party.  To demonstrate "irreparable harm" in the absence of a preliminary injunction, a movant's injury must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks omitted).  An "actual, here-and-now injury" found by the Court would be "substantial enough … to deem the injury … *imminent*."  *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (emphasis added).

A.   **The Significant Impact on BlueTriton's Business**

BlueTriton and its predecessors have collected and bottled Arrowhead Springs water for more than 100 years, and have built a generational brand whose success lies in BlueTriton's ability to access its water rights.[48]  The Notice of Denial's elimination of that access to Arrowhead Springs will significantly, materially, adversely, and irreparably harm BlueTriton's infrastructure, personnel, capital, and other resources.  BlueTriton's economic investments, business operations, and employees all will be harmed if this Court does not enjoin the Notice of Denial.

BlueTriton has invested millions of dollars in the infrastructure required to collect water from the Arrowhead Springs.[49]  This infrastructure includes a four-inch diameter, approximately 23,000-foot long stainless steel pipeline that transports water from the upper

---

[48] Ex. 1.
[49] *Id.* ¶20.

reaches of Strawberry Canyon in the SBNF to BlueTriton's collection point on private land.[50]  BlueTriton also has constructed or installed extensive equipment to support its operations, including spring boxes, stream gauges and monitoring stations, valves, foot trails, a tank facility, and helicopter landing areas.[51]  This infrastructure has no purpose other than collection and transportation of spring water and without the permit, BlueTriton has no other ability to collect water from Arrowhead Springs and put this infrastructure to use.[52]  Even a temporary interruption in flow on an ongoing basis could irreparably harm the infrastructure, and would require extensive expenditures to bring it back into service.[53]  And if BlueTriton proceeds with removing this infrastructure (as the Notice of Denial requires) but this Court later sets aside the Forest Service's action, BlueTriton would be burdened again with the extraordinary cost of re-designing, re-engineering, re-installing, and re-permitting new infrastructure. Significant safety and security issues will result if the Forest Service's action is not set aside.[54]  The Notice of Denial requires that BlueTriton bypass all water to the surface from both collection tunnels, which will attract third parties and thereby create safety risks to the public, and will potentially cause environmental harm, including erosion and down-gradient sedimentation.[55]  Removing locks from tunnel and borehole access points (or providing the Forest Service with copies of keys) would allow unfettered access to industrial facilities by third parties, also creating a public safety risk in areas that are not suitable for exploration.[56]

---

[50] *Id.* ¶8.
[51] *Id.* ¶20.
[52] *Id.* ¶22.
[53] *Id.* ¶23.
[54] *Id.* ¶25.
[55] *Id.* ¶27.
[56] *Id.* ¶28.

The financial harm to BlueTriton from loss of access to its water rights would be significant and irreparable. Arrowhead Springs is unique in quality, which is a primary factor in why consumers buy the brand.[57] The Arrowhead Springs are the eponymous source for Arrowhead Mountain Spring Water.[58] Without the source, brand identity, reputation, and customer loyalty would be affected.[59] Loss of this source would also mean reduced volumes of available water, and that BlueTriton would have to invest significant time and financial resources to find a new spring source that would meet the same exacting quality standards.[60] BlueTriton would also suffer harm from the increased costs of replacing the lost supply, including from trucking water from longer distances, and increased logistics, fuel, and labor costs.[61] The permanent loss of access to Arrowhead Springs could likely never be fully compensated.

## III.  The Balance of Equities and the Public Interest Favor Issuing a Preliminary Injunction.

When "the Government is the opposing party," the Court's analyses of the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both favor an injunction.

As explained above, the status quo for more than a century has involved BlueTriton collecting water at Arrowhead Springs and transporting it out of the SBNF. The Government has identified no exigency that justifies this change now. The Notice of Denial identifies no specific need within the SBNF that would go unmet if BlueTriton is allowed to maintain its pipeline along the right-of-way as it has since the Hoover Administration. That

---

[57] *Id.* ¶30.
[58] *Id.* ¶35.
[59] *Id.*
[60] *Id.* ¶31.
[61] *Id.* ¶33.

stands in stark contrast to the harms BlueTriton would immediately suffer if the Notice of Denial is not enjoined.

The public interest cries out for an injunction.  The SBNF borders the San Manuel Band's Arrowhead Springs Hotel property, where it operates various government and business offices.  BlueTriton delivers water from its pipeline to the San Manuel Band, which uses it as its primary source of supply for fire management and suppression, other domestic uses, and irrigation.[62]  Without water from BlueTriton, the San Manuel Band does not have adequate water to meet these needs.[63]  This is especially dangerous during the summer months, when fire danger is high, as has been the case in 2024.  Unmanaged fires on the San Manuel Band's property could also pose a risk to the SBNF itself, since fires do not observe property boundaries.  The Notice of Denial makes no accommodation for supplying water to the San Manuel Band, and the Forest Service's subsequent stay for the sole purpose of supplying water to the San Manuel Band was limited to 30 days.  Without enjoining the Forest Service's action here, during the peak of fire season, the San Manuel Band's property and lives are at great risk.

Finally, BlueTriton employs hundreds of people at its manufacturing and co-production facilities in Southern California in jobs that support the Arrowhead Mountain Spring Water brand.[64]  The Arrowhead Springs are a critical regional source for the brand, and any potential threat to BlueTriton's ability to source water from the Arrowhead Springs could have a potential impact on the employees at regional springs and locations across the

---

[62] *Id.* ¶34.
[63] *Id.*
[64] *Id.* ¶37.

state who source, bottle and distribute the brand.[65]  Such an outcome would harm the

company, the citizens of California, and the State.

**IV.     Plaintiff Should Not Be Required to Post a Bond.**

Federal Rule of Civil Procedure 65(c) allows the Court to require security when

issuing a preliminary injunction, but provides "wide discretion in the matter of requiring

security." *Nat'l Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971).  "The

purpose of the security given under Rule 65(c) is to cover the costs and damages suffered by

the party wrongfully enjoined." *Id.* at 169.  On that basis, courts have declined to impose

more than a nominal bond when an injunction is issued against a federal agency alleged to

have violated federal law.  *See, e.g.*, *id.* (imposing $100 nominal bond for injunction against

the Department of the Interior regarding the violation of federal law).  Indeed, this Court

may entirely "dispense with any security requirement whatsoever where the restraint will do

the defendant no material damage, where there has been no proof of likelihood of harm,

and where the applicant for equitable relief has considerable assets and is ... able to respond

in damages if defendant does suffer damages by reason of a wrongful injunction." *Fed.

Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (internal

citations, quotation marks, and alterations omitted).

The Court should not impose any bond here.  The requested injunction would

maintain a status quo that has lasted nearly a century.  The Forest Service cannot lay claim

to any material damages it would incur during the pendency of this lawsuit if the Notice of

Denial is stayed.  Whatever expenses the Forest Service might theoretically incur with

---

[65] *Id.*

respect to BlueTriton's right-of-way, the agency already has sufficient tools at its disposal to lawfully recoup those costs as the permitting authority.  No bond is necessary.

## **CONCLUSION**

The Court should preliminarily enjoin the Forest Service's Notice of Denial.  The Notice of Denial is arbitrary, capricious, and contrary to law, because it eliminates entirely BlueTriton's access to water it has maintained vested rights to since the middle of the 19th century.  Worse, it does so without explaining why the Government now believes it has superior right to the water.  BlueTriton will suffer irreparable harm absent a preliminary injunction, including at a minimum the cost to remove infrastructure it has installed and maintained over the past century.  And the neighboring public—most notably the San Manuel Band—will be deprived of its primary source of domestic, irrigation, and fire-fighting water.

Dated:  August 6, 2024

Respectfully submitted,

*/s/ George P. Sibley, III*
George P. Sibley, III (D.C. Bar No. 1011939)
Kevin S. Elliker (D.C. Bar No. 90011101) (D.D.C. admission pending)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
gsibley@HuntonAK.com
kelliker@HuntonAK.com


Andrew J. Turner (D.C. Bar No. 471179)
Todd S. Mikolop (D.C. Bar No. 1030859)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037-1701
(202) 955-1500
aturner@huntonAK.com
tmikolop@HuntonAK.com

*Counsel for Plaintiff BlueTriton Brands, Inc.*

**TABLE OF EXHIBITS**

| 1 | Declaration of Lewis W. Mixon, III |
|---|---|
| 2 | Memorandum from Rita P. Maguire to Natalie Stork (July 11, 2016) |
| 3 | Report of Pioneer Title Insurance and Trust Company (Sept. 23, 1930) |
| 4 | Judgment, *Del Rosa Mut. Water Co. v. D.J. Carpenter, et al.*, No. 31798 (San Bernardino Cty. Sup. Ct. 1931) |
| 5 | Chain of Title for Arrowhead Water Rights and SUP (without exhibits) |
| 6 | Am. Statement by Foreign Corp. (filed May 5, 2021) |
| 7 | Memorandum from District Ranger Kenton P. Clark to SBNF Forest Supervisor (Aug. 28, 1964) |
| 8 | Memorandum from District Ranger Kenton P. Clark to SBNF Forest Supervisor (Apr. 20, 1964) |
| 9 | United States Forest Service Special Use Permit No. FCD728501 (Aug. 24, 2018) |
| 10 | Letter from Larry Lawrence to District Ranger Joseph Rechsteiner (Aug. 24, 2018) |
| 11 | Decision Memo (June 27, 2018) |
| 12 | Memorandum from Haley & Aldrich, Inc. to BlueTriton Brands, Inc. (July 16, 2024). |
| 13 | State Water Resources Control Board, Order WR 2023-0042 (Sept. 19, 2023) |
| 14 | Letter from District Ranger Michael Nobles to David Feckley (Sept. 29, 2023) |
| 15 | Letter from District Ranger Michael Nobles to Lewis Mixon (Mar. 1, 2024) |
| 16 | Letter from Lewis Mixon to District Ranger Michael Nobles (Apr. 23, 2024) |
| 17 | Letter from District Ranger Michael Nobles to Lewis Mixon (Apr. 24, 2024) |
| 18 | Letter from Lewis Mixon to District Ranger Michael Nobles (May 14, 2024) |
| 19 | Letter from District Ranger Michael Nobles to Lewis Mixon (May 24, 2024) |
| 20 | Letter from Lewis Mixon to District Ranger Michael Nobles (June 4, 2024) |
| 21 | Letter from District Ranger Michael Nobles to Lewis Mixon (June 21, 2024) |
| 22 | United States Forest Service, *Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit* FCD728503 |