# EXHIBIT 1

<u>**DECLARATION OF LOUIS W. MIXON, III**</u>

I, Louis W. Mixon, III, declare:

<u>**Qualifications**</u>

1.      I have personal knowledge of the facts set forth herein except as to those matters stated upon information and belief, and, as to such matters, I am informed and believe that they are true.

2.      Since August 29, 2014, I have been employed by BlueTriton Brands, Inc. ("<u>BlueTriton</u>") and its predecessors.  I currently serve as BlueTriton's Senior Manager - Natural Resources with primary responsibility for the Arrowhead® Mountain Spring Water brand in California and Colorado.

3.      As Senior Manager - Natural Resources, I am familiar with BlueTriton's spring resources, water infrastructure, operations, and business throughout the States of California (including, without limitation, with respect to BlueTriton's operations in Strawberry Canyon and in connection therewith) and Colorado.  My responsibilities include sustainable development of new water sources, siting of new facilities, sustainable management of existing water resources, development and management of monitoring and control systems, sustainable water sourcing for each facility, public outreach, and community relations.  These responsibilities include locating, developing, and permitting spring sources.  I am also familiar with how any potential interruption in BlueTriton's operations would affect BlueTriton infrastructure, personnel, capital, and other resources, as well as BlueTriton's ability to provide spring water to consumers and to the San Manuel Band of Mission Indians, a Federally-recognized Indian Tribe (the "<u>Tribe</u>"), which uses water provided by BlueTriton for fire suppression (including for use by local firefighting authorities), domestic, and irrigation, among other uses.

**Overview**

4.      I make this declaration in support of the proposed Motion for Preliminary Injunction filed by Movant BlueTriton in the above-captioned case.

5.      The purpose of this declaration is to describe the significant impacts and harms that BlueTriton will immediately incur as a result of the United States Forest Service's ("Forest Service") Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503 dated July 26, 2024 and received by BlueTriton on July 27, 2024 ("Notice of Denial"), and that BlueTriton will continue to incur if this Court does not enjoin the Notice of Denial.

6.      As explained below, the Notice of Denial purports to place immediate, full and indefinite restrictions on BlueTriton's ability to rely on the right-of-way identified by Special Use Permit No. FCD728503, and to prevent BlueTriton's access to its vested State water rights.  These restrictions significantly, materially, adversely, and irreparably harm BlueTriton's economic investments, business operations, contractual obligations, and employees.  The Notice of Denial will also significantly, materially, adversely, and irreparably harm the Tribe, consumers, and the State of California.

**Background**

7.      I am informed and believe that the Forest Service issued Special Use Permit No. FCD728503 (the "SUP") to BlueTriton on February 21, 2023.  I am informed and believe that the SUP authorizes BlueTriton's use of an approximately five-foot wide, 4.5-mile long, right-of-way (the "ROW") that crosses a total of 4.51 acres of Forest Service-managed land within the southwestern boundary of the San Bernardino National Forest (the "SBNF"), near the City of San Bernardino, CA.

8.      BlueTriton has engineered, constructed, and installed—and owns—a four-inch diameter, approximately 23,000-foot long stainless steel pipe with support

legs and associated components (the "Pipeline").  The Pipeline carries spring water from certain of its springs located in the upper reaches of Strawberry Canyon in the SBNF and commonly known as the "Arrowhead Springs" (the "Arrowhead Springs") down Strawberry Canyon, along the ROW identified in the SUP, to a collection point located on privately owned land (the "Load Station").

9.      The Arrowhead Springs are comprised of a series of boreholes and tunnels generally designated as spring sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, 8, 10, 11, and 12.  Groundwater in the boreholes and tunnels reaches the surface at these spring sources through natural subsurface pressure and gravity; it is not pumped from the ground. Attached hereto as Exhibit A is a photograph compilation that I am informed was compiled on July 30, 2024, the constituent photos of which I am informed were taken on January 17, 2022, January 20, 2022, April 29, 2022, and July 11, 2022, showing spring sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, 8, 10, 11, and 12.

10.      I am informed and believe that BlueTriton collects water from the Arrowhead Springs sources in Strawberry Canyon pursuant to certain percolating groundwater rights claimed and owned by BlueTriton (the "Arrowhead Water Rights").  I am informed and believe that the Arrowhead Water Rights authorize the use of the water originating from the Arrowhead Springs sources, consistent with California water rights law.  I am informed and believe that the Arrowhead Water Rights also can be traced to a possessory claim recorded in 1865, and to a subsequent patent from the United States recorded in 1882.  I am informed and believe that the only known dispute regarding the ownership of the Arrowhead Water Rights was resolved in 1931, in *Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San Bernardino Cty. Super. Ct., Oct. 19, 1931).  I am informed and believe that through a series of corporate transactions and conveyances of record, BlueTriton is the sole current owner of the Arrowhead Water Rights.  I am informed and believe that the Arrowhead Springs have been producing commercial quantities of spring water for

more than 120 years, and have been used to supply water to the owner of the Arrowhead Hotel property pursuant to contract.  I am informed and believe that the Tribe owns and occupies the Arrowhead Hotel property, which is located directly adjacent to the SBNF.

11.    I am informed and believe that between 2015 and 2021, the California State Water Resources Control Board ("State Board") conducted an investigation into BlueTriton's Arrowhead Water Rights.  Following the conclusion of this investigation, the State Board issued Order WR 2023-0042 to BlueTriton on September 19, 2023 (the "Order"), which ordered BlueTriton to cease its diversions for bottling from Arrowhead Springs sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, and 8 (the "Affected Sources"), but not from Arrowhead Springs sources 10, 11, and 12 (the "Unaffected Sources").  The Order also authorizes BTB to deliver water to the Arrowhead Property Owners from the Affected Sources.  BlueTriton complied with the Order.  BlueTriton continued to collect water from the Unaffected Sources under its Arrowhead Water Rights in accordance with the Order.  I am informed and believe that BlueTriton successfully sought and obtained a Stay of the Order from the Superior Court of California, County of Fresno, Central Division, on February 2, 2024 ("Stay"), and that the merits of BlueTriton's challenge to the Order remain pending in state court.  BlueTriton resumed exercise of its Arrowhead Water Rights and its diversions of water from the Affected Sources in the SBNF following the issuance of the Stay.

12.    I am informed and believe that prior to 2024, the Forest Service had never challenged BlueTriton's exercise of its Arrowhead Water Rights in the SBNF.  On May 22, 2024, I met with the Forest Service, and on May 24, 2024, I received a letter from the Forest Service, in which the Forest Service, for the first time, directly asserted "[t]he water groundwater rights remain with the United States and are used permissively … And BlueTriton's permits make clear that no water rights are

transferred … The ground water rights utilized here remain with the United States as the overlying landowner." I am informed and believe that this is the first direct assertion of this position by the Forest Service in the nearly 100-year history of BlueTriton and its predecessors operating in the SBNF under special use permits issued by the Forest Service.

13.     I am informed and believe that on February 21, 2023, BlueTriton's then-serving Natural Resource Manager timely submitted a request to the Forest Service for renewal of the SUP in accordance with the terms of the SUP and applicable law. On July 27, 2024, I received the Notice of Denial from the Forest Service. The Notice of Denial states that the Forest Service denies BlueTriton's February 21, 2023 renewal request, and that as a result of the denial, the existing SUP is terminated. The Notice of Denial requires that BlueTriton's use of Forest Service lands, including the operation and maintenance of a water collection/water transmission system, immediately stop. The Notice of Denial further requires that BlueTriton:

      a. Within seven (7) days of the date of the Notice of Denial, take any necessary steps to stop use of the BlueTriton pipeline for water conveyance in Strawberry Canyon, by severing or blocking the pipe at each tunnel or borehole or other such means as to bypass all flow to the surface from each point of diversion.

      b. Remove locks from all BlueTriton equipment on SBNF land, or provide the Forest Service with copies of all keys.

      c. Prepare and submit a plan to remove its infrastructure from SBNF lands. The plan shall be submitted within twelve (12) weeks of the date of the Notice of Denial and shall include a time frame for complete removal.

The Notice of Denial also states that spring developments will be authorized only if BlueTriton demonstrates, or the Forest Service agrees, that water collections are in "excess" of the "needs of forest resources."  BlueTriton and its predecessors have requested that the Forest Service quantify and locate these "needs," and I am informed and believe that the Forest Service has never provided a response.  I am informed and believe that BlueTriton also conducted a series of hydrologic and paired basin studies at the Forest Service's request, and that these studies show that BlueTriton's collections at Arrowhead Springs had no measurable effect on the flow in Strawberry Creek, no effect on other water sources outside of Strawberry Canyon, and no impairment of Strawberry Canyon when compared to adjacent canyons.

14.    I am informed and believe that on August 1, 2024, Forest Service Forest Supervisor Danelle Harrison authorized BlueTriton to continue to leave open, operate, and collect water from Arrowhead Springs sources 2, 3, and 8 for delivery to and use by the Tribe, via the existing pipeline system, for a period of 30 days.  I am informed and believe that all other requirements of the Denial Letter remain in effect.

### BlueTriton Will Be Significantly and Irreparably Harmed by the Notice of Denial

#### Description of Harm Based On Publicly Available Information

15.    I am informed and believe that BlueTriton considers much of its proprietary economic and financial information to be a trade secret and confidential.  I am informed and believe that BlueTriton would customarily ask for a protective order before publicly discussing a trade secret or other confidential information.  I am informed and believe that should this Court need more information to make a determination in this matter, BlueTriton would be willing to provide such information subject to a protective order.  Nevertheless, there are a number of publicly available facts that demonstrate the significant harm that BlueTriton would experience in the

event that BlueTriton were deprived of access to, and volumes of spring water from, the Arrowhead Springs.

**Harm Would Be Significant and Irreparable: Loss of Arrowhead Springs**

16.     The ROW identified in the SUP provides the only currently available means of transporting spring water from the Arrowhead Springs across SBNF land to the Load Station (which is located on private property).  The Arrowhead Springs are located entirely within the SBNF, and I am informed and believe that BlueTriton does not have the legal right to access and maintain its Pipeline on any route over the SBNF other than the ROW identified in the SUP.

17.     There are no currently available alternatives to the Pipeline.  The Arrowhead Springs are located in steep terrain that is not accessed by any currently-existing road, and the construction of a new road would be extremely costly and would require significant infrastructure construction in the SBNF.  In addition, water collection via helicopter or other vehicle is not economically viable.

18.     The Forest Service decision to prevent BlueTriton from using the ROW identified in the SUP will result in BlueTriton's loss of access to the Arrowhead Springs, because BlueTriton would have no other means to access the Arrowhead Springs.  Thus, BlueTriton will be unable to collect any quantities of the spring water to which I am informed and believe it is entitled under the Arrowhead Water Rights.

19.     Moreover, because spring water from the Arrowhead Springs is unique in quality (including, without limitation, mineral content) and taste, the loss of this spring water would cause irreparable harm to BlueTriton.

**Harm Would Be Significant: Loss of Investment in Infrastructure**

20.     In reliance on the SUP and on its understanding that it would have continued access to its water rights within the SBNF pursuant to State and federal law,

BlueTriton (and its predecessors-in-interest) have invested millions of dollars over the last 94 years in building, constructing, installing, maintaining and repairing infrastructure to access and transport spring water from the Arrowhead Springs to the Load Station (the "Infrastructure"). The Infrastructure is located in part on the ROW and in part on private property adjacent to the SBNF. The Infrastructure includes, without limitation: (i) the Pipeline; (ii) water collection tunnels, horizontal wells, spring boxes, and stream gauges and monitoring stations; (iii) necessary service foot trails; (iv) a tank facility that includes two 90,000-gallon storage tanks; (v) the Load Station; and (vi) certain associated easements and rights, such as helicopter landing areas.

21.     I am informed that BlueTriton has historically received multiple threats to our business and our employees, including in connection with the Forest Service's consideration of SUP renewal requests. Because we take our responsibility to our customers and our employees very seriously, we have invested significant sums of money to upgrade our security systems for the Infrastructure.

22.     The Infrastructure has no purpose other than the collection and transportation of spring water. If BlueTriton were unable to collect spring water from the Arrowhead Springs, then BlueTriton's Infrastructure (and BlueTriton's significant investment therein) would lose all of its value.

23.     Even if BlueTriton's ability to collect spring water from the Arrowhead Springs were only temporarily restricted, an interruption in water flow through the Infrastructure (including, without limitation, the Pipeline), could irreparably damage the Infrastructure (including, without limitation, the Pipeline), which was not designed to be entirely without water flow for significant periods of time. At a minimum, an interruption in water flow would necessitate significant sanitizing of, and the performance of significant operational checks on, the Pipeline and other Infrastructure before BlueTriton could resume operating the Infrastructure. Interruption in water

flow during the summer months would also cause irreparable harm to seals, valves, and other pieces of the equipment that must remain wetted or will seize and/or dry out and fail, thus requiring replacement if/when pipeline operations resume.

24.     In addition to the loss of its investment in the Infrastructure as described above, BlueTriton has made other significant investments in its operations (outside Strawberry Canyon) in reliance on the spring water collected from the Arrowhead Springs.  The loss of spring water from the Arrowhead Springs would interfere with these investments, and would result in significant economic harm to BlueTriton.

25.     Removal of the Infrastructure as required by the Notice of Denial will require significant financial expenditures.  In addition, BlueTriton would experience even more significant economic harm if the Notice of Denial is found to be unlawful **after** BlueTriton has already removed the Infrastructure.  In such an event, BlueTriton would then be required to invest additional financial resources to design, engineer, obtain necessary approvals for, and rebuild the Infrastructure in order to resume collecting spring water under its longstanding State water rights.

## Harm Would Be Significant: Safety and Security Issues

26.     The Notice of Denial requires that all use by BlueTriton of Forest Service lands, including for the maintenance of BlueTriton's existing Infrastructure, stop immediately.  The Notice of Denial also requires that BlueTriton sever or block the pipe at each tunnel or borehole, or such other means as to bypass all water flow to the surface from each point of diversion.  The Notice of Denial also requires that BlueTriton remove all locks from all BlueTriton equipment (or provide the Forest Service with copies of all keys).

27.     Bypassing all water flow to the surface from each point of diversion will create public safety issues by creating new surface flows that could become attractive nuisances and disrupt or dislodge rocks and other debris.  Creating new surface flows

also creates risks for environmental harm, including excessive erosion and subsequent sedimentation down-gradient.

28.     BlueTriton's equipment and tunnel and borehole access points are industrial environments where human and wildlife safety is paramount.  Unlocking this equipment and other Infrastructure would create opportunity for the public and wildlife to access equipment and areas that are not suitable for exploration, posing a risk to public safety.  Providing the Forest Service with copies of keys would also create additional risks to security by putting keys to BlueTriton's Infrastructure into the hands of persons outside BlueTriton's enterprise, increasing the risk of loss and tampering.

**Harm Would Be Significant: Loss of Spring Water/Replacement Costs**

29.     BlueTriton collected approximately 103.6 million gallons of spring water from the Arrowhead Springs during 2023.  That volume was reported to the California State Water Resources Control Board pursuant to the reporting procedures that (I am informed and believe) are established under California law.  Loss of that volume would mean that BlueTriton would suffer a significantly decreased supply of water for Arrowhead Mountain Spring Water.  In addition, if BlueTriton were unable to meet demand and stock its product in certain locations due to this decreased supply, then BlueTriton could suffer a significant loss of sales and of sales channels as a result.

30.     Because spring water from the Arrowhead Springs is unique in quality and taste, and because spring water is very minimally processed, not every spring source will meet BlueTriton's exacting taste and quality criteria for bottling as Arrowhead Mountain Spring Water.  Accordingly, it could take a significant amount of time to replace this lost source of supply (the Arrowhead Springs).  In fact, it is possible that this lost source would never be replaced.

31.    Each new spring source that BlueTriton determines meets its exacting taste and quality standards typically takes 3-7 years to permit and make operational (for example, I am informed and believe that the California Department of Public Health requires each operational spring source to have a corresponding Private Water Source Operator License).  In my professional experience, it generally takes millions of dollars to locate, permit, and make operational a single new spring source. Furthermore, a single new spring source may not generate an amount of spring water sufficient to replace the lost volume from the Arrowhead Springs.  If multiple new spring sources are needed to replace this lost volume, then these permitting and infrastructure costs would be multiplied.

32.    If BlueTriton is deprived of all spring water from the Arrowhead Springs, then, until this lost volume from the Arrowhead Springs is replaced, BlueTriton will have a smaller total available supply of spring water.  In the fiercely competitive bottled spring water market, continuous and uninterrupted satisfaction of its customers' product demands is critical to BlueTriton's Arrowhead Mountain Spring Water business.  If BlueTriton's Arrowhead Mountain Spring Water products are not readily available on retailers' shelves, then other brands of water may be stocked in their place, and BlueTriton's customers may switch to other brands.

**Harm Would Be Significant: Increased Operating Costs/Pollution**

33.    As set forth above, in order to replace any lost supply from the Arrowhead Springs, BlueTriton would need to obtain spring water supplies from other spring sources.  Most of these spring sources would be located farther from BlueTriton bottling plants than the Arrowhead Springs.  Some of these spring sources could even be located in other states.  To the extent needed, the replacement spring water from these spring sources would then be trucked longer distances to the bottling plants.  This longer journey would significantly increase BlueTriton's logistics, fuel,

and labor costs.  In addition, this longer journey would increase pollution in the form of increased greenhouse gas emissions, increased traffic, and potential degradation of product quality during transport.

### Harm Would Be Significant: Loss of Water for Fire Suppression

34.    BlueTriton delivers water from its pipeline to supply the Tribe and their operations at the Arrowhead Hotel property, which borders the SBNF.  I am informed that the Tribe uses the water from Arrowhead Springs for fire management and suppression (including for use by local firefighting authorities), other domestic uses, and irrigation.  Fire management and suppression is a critical need in Southern California, particularly during the summer months.  I am informed that, without the water from Arrowhead Springs supplied by BlueTriton, the Tribe does not have adequate water to protect the Tribe's Arrowhead Hotel property from fires, which could also create additional fire risk for the SBNF itself, since the Arrowhead Hotel property is located directly adjacent to the SBNF.

### Harm Would Be Significant: Eponymous Source/Goodwill

35.    BlueTriton bottles and distributes Arrowhead Mountain Spring Water throughout the State of California, as well as other Western States.  The Arrowhead Springs were the original source for the current Arrowhead brand.  BlueTriton's continued access to sustainable supplies of spring water from the Arrowhead Springs is critical to consumer identity and brand loyalty.

36.    The Arrowhead Springs are the eponymous source for Arrowhead Mountain Spring Water, and the Arrowhead Springs are the symbol upon which the Arrowhead Mountain Spring Water brand was originally built, and continues more than 120 years later.  There is significant goodwill associated with the Arrowhead Springs that has accrued to BlueTriton's benefit over time.  BlueTriton's loss of its

ability to collect spring water from the Arrowhead Springs would result in the loss of this accrued goodwill. Loss of spring water supplies from Arrowhead Springs would irreparably impact brand identity, brand reputation, and customer loyalty, and would diminish sales due to lack of access to the heritage namesake of the brand.

### Harm Would Be Significant: Employment/Tax Revenues

37.     BlueTriton currently employs hundreds of people in California who work in connection with Arrowhead Mountain Spring Water. Arrowhead Springs are a critical regional source for the brand, and any potential threat to BlueTriton's ability to source from the Arrowhead Springs could have an impact on the brand overall, including all of the hard-working Californians who support it. There is potential impact to the employees at regional springs and locations across the state who source, bottle and distribute the brand in three factories and certain co-manufacturing facilities in Southern California if the brand is unable to source spring water. I am informed and believe that the State has a shared interest in the viability of the Arrowhead brand, as the State derives significant income tax revenue from employees in this region.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2024 in Dallas, Texas.

By: _____
Louis W. Mixon, III
Senior Manager - Natural Resources
BlueTriton Brands, Inc.

4718 Mountain Creek Parkway
Dallas, Texas 75236

Attachment A

# Arrowhead Springs







Outside Tunnel 2



Inside 1 Complex



Outside Tunnel 3



Inside 7 Complex

T3
M

T2
M

1 complex
M

7 complex
M

M = Metered

10 complex

10,11,12
M



Inside 10 Complex

# Tunnel 2






# Tunnel 3






# Spring Complex 1 (1, 1A, 8)





# Spring Complex 7 (7, 7A, 7B, 7C)






# Spring Complex 10 (10, 11, 12)





