# EXHIBIT 3

# PIONEER TITLE INSURANCE AND TRUST COMPANY



MAIN OFFICE
SAN BERNARDINO, CALIF.
440 COURT STREET
PHONE 4781

OTHER OFFICES

EL CENTRO, CALIF.
555 MAIN STREET
PHONE 175

LAS VEGAS, NEVADA

San Bernardino, California
September 23, 1930

O'Melveny, Tuller & Myers, Attorneys,
Title Insurance Building,
433 South Spring Street,
Los Angeles, California.

Gentlemen:

Order No. 95256  O'MELVENY, TULLER & MYERS
RECEIVED
SEP 2 1930
AM  PM
7·8·9·10·11·12·1·2·3·4·5·6

### Attention: Mr. Homer I. Mitchell

In accordance with Mr. Mack's letter of September 10, 1930 and your further instructions of September 11, 1930, relative to the interests of the parties to that certain Action entitled Del Rosa Water Company vs. California Consolidated Water Company, et al., being Case No. 31798 in the Superior Court for San Bernardino County, we would report the following matters with liability not to exceed $1.00 on the part of the Pioneer Title Insurance and Trust Company.

The <u>Arrowhead Springs property</u>, so-called, may be divided for our purposes, into two classes; <u>first</u>: That property lying in the East Twin Creek Water Shed; <u>second</u>: That property lying in the West Twin Creek Water Shed. No report has been made on the latter class of property since the property in the West Twin Creek Water Shed, said Creek also being known as Waterman Creek, consists mainly of the Old Waterman Ranch and other property in Waterman Canyon, and the rights to water from this stream have already been litigated in an old Action No. 4733 in the Superior Court for San Bernardino County, entitled West Twin Creek Water Company vs. C. E. Follwell, Jane G. Waterman and Sather Banking Company, et al., in which Case a stipulated judgment was entered binding the parties to the Action. In connection with the property of Arrowhead Springs Corporation lying in the East Twin Creek Water Shed, we are enclosing copies (uncertified) of the following documents.

1st: Possessory Claim of D. N. Smith, recorded March 21, 1865 in Book "A" of Possessory Claims, page 75.

2nd: Patent from United States of America to David Noble Smith, dated February 1, 1882 and recorded in Book "B" of Patents, page 91. The description in this Patent was recorded erroneously and the instrument was re-recorded to correct this error.

- EXHIBIT "A"-
Page 1 of 30 of BB&K
Opinion Letter to BCI

3rd:   A Patent from the United States of America to David Noble Smith dated February 1, 1882 and recorded in Book "B" of Patents, page 573, covering the East half of the Southeast quarter and the Southeast quarter of the Northeast quarter of Section 11, and the Northwest quarter of the Southwest quarter of Section 12, Township one North, Range four West.

4th:   Water Location Notice showing appropriation by the Arrowhead Hot Springs Hotel Company recorded in Book "B" of Water Records, page 476, on March 26, 1887.

5th:   Water Location Notice showing appropriation by the Arrowhead Hot Springs Hotel Company recorded May 7, 1887, in Book "C" of Water Records, page 40.

6th:   Water Location Notice showing appropriation by Arrowhead Hot Springs Hotel Company recorded May 9, 1887 in Book "C" of Water Records, page 22.

7th:   Amended Notice of Appropriation by Arrowhead Hot Springs Hotel Company recorded November 30, 1887 in Book "C" of Water Records, page 296.

8th:   Amended Notice of Appropriation by Arrowhead Hot Springs Hotel Company recorded November 30, 1887 in Book "C" of Water Records, page 298.

9th:   Patent from United States of America to Thomas B. Elder covering the South half of the Northwest quarter and the West half of the Northeast quarter of Section 12, Township one North, Range four West, dated October 6, 1888 and recorded in Book "C" of Patents, page 338.

10th:   Water Appropriation Notice by Herbert J. Royer recorded June 10, 1892 in Book "D" of Water Records, page 312.

11th:   Water Appropriation Notice by Herbert J. Royer recorded June 10, 1892 in Book "D" of Water Records, page 313.

12th:   Patent from United States of America to Benjamin F. Coulter, et al., covering the Northeast quarter of the Southwest quarter; the North half of the Southeast quarter and the Southeast quarter of the Northeast quarter of Section 12, Township one North, Range 4 West, dated August 15, 1889 recorded in Book "C" of Patents, page 374.

13th:   Notice of Water Appropriation by H. J. Royer recorded November 7, 1891 in Book "D" of Water Records, page 133.

14th:  Patent from United States of America to Southern Pacific Railroad Company of California, covering all of Section 7, Township one North, Range three West, (other property in this Patent not set out in this copy), dated November 1, 1897 and recorded in Book "E" of Patents, page 386.

15th:  Patent from United States of America to Herbert J. Royer covering the North half of the Northwest quarter of Section 12, Township one North, Range four  West, dated May 12, 1897 and recorded in Book "G" of Patents, page 63.

An examination of the records subsequent to the date of the instruments above set out indicates that the property described in the above patents, together with the interest of the appropriators of the water described in the Water Notices has descended to Arrowhead Springs Corporation (a Delaware Corporation) by Deed from Arrowhead Springs Company, (a Maine Corporation) to said Arrowhead Springs Corporation, dated July 1, 1925 and recorded August 22,1925 in Book 19 of Official Records, page 20.  At the time of the filing of this Deed there was a memorandum made on our office records relative to the transaction which reads as follows:-

"Note the exception contained in the deed of Arrowhead Springs Company, a corporation, (Maine) to Arrowhead Springs Corporation, a corporation, (Delaware), dated July 1, 1925 and recorded August 22, 1925 in Book 19 of Deeds, page 20, which deed, after granting ten parcels of land, proceeds as follows:

"SAVING AND EXCEPTING from all of the above described property all roads and highways.

"ALSO all water rights, easements and privileges belonging to said real property or any part thereof, and all water rights and all easements, servitudes and privileges with respect to water owned by Arrowhead Springs Company in regard to any water of or in any Canyon which enters said land.

"TOGETHER with all water of West Twin Creek and other water rights appurtenant to said premises, described in decree rendered June 14, 1894 in Action entitled "West Twin Creek Water Company, a corporation, plaintiff, vs Mrs. J. G. Waterman, et al" being Action No. 4733 in the Superior Court of the State of California in and for the County of San Bernardino, as being owned by the Sather Banking Company, the interest of which Company is now held by Arrowhead Springs Company.

"TO HAVE AND TO HOLD unto the said grantee, its successors and assigns forever."

"Note 1:  The location of the roads which may have been excepted by this provision in the deed is uncertain, it being understood that there are a number of private roads on the property, the exact location of which is not a matter of record.

"Note 2:  The apparent exception of the water rights in connection with the land covered by this search is capable of the construction that it was intended to convey such water rights and the exception is here noted because of its ambiguity."

The title of the Arrowhead Springs Corporation, a corporation (Delaware), was subject to:

"Those certain rights contained in the Deed of Arrowhead Hot Springs Company, a corporation, (Maine) to Seth Marshall, dated October 18, 1923 and recorded October 24, 1923 in Book 813 of Deeds, page 254, which Deed grants a parcel of land described as:-

BEGINNING at corner No. 1, the Southwest corner, a one-inch pipe, whence the South quarter corner of Section 11, 1N-4W, SBBM, bears South $40^{\circ}$ 1' West 2070.3 feet; thence North $18^{\circ}$ 39' West 171.9 feet to corner No. 2, a $1\frac{1}{4}$ inch iron pipe; thence North $26^{\circ}$ 34' East 268.72 feet, corner No. 3, a 2 inch pipe; thence South $89^{\circ}$ 5' East 79.68 feet to corner No. 4, 2 inch iron pipe; thence South $4^{\circ}$ 51' West 405.19 feet to corner No. 5, a 2 inch iron pipe; thence North $89^{\circ}$ 5' West 110.67 feet to corner No. 1, the point of beginning, which deed contains the following recital:

"During the occupancy of said premises, the Grantee, his heirs or assigns, shall have the right to use the waters of the grantor for domestic purposes only, including in that term the household, private lawns, shrubberies and gardens adjacent thereto."

And also subject to:

"That certain Lease made and entered into between Arrowhead Springs Corporation, as Lessor, and Arthur R. Peck and Carrie A. Peck, his wife, as joint tenants, Lessees, dated June 30, 1927 and recorded August 16, 1927 in Book 262 of Official Records, page 304, being a lease for the term of twenty years, on the property described as follows:-

"All that certain parcel of land containing 1 acre, more or less, situate in the County of San Bernardino, in the Southeast quarter of the Northeast quarter of Section 11-1N-4W, described as follows:-

"That portion of the present Arrowhead Springs Hotel property described as - Lot 7 upon a plan on file in the office of the Lessor prepared by Roland E. Coate, architect, and showing the location of proposed cottages to be erected in connection with said hotel property, which demised parcel is situated in a Southerly direction from the main building of said Arrowhead Springs Hotel and about 500 feet therefrom and is delineated upon the ground by monuments indicating the exact boundaries thereof, together with all rights, easements and appurtenances to the same belonging and usually had and enjoyed therewith, including an easement over the adjacent land of the lessor to afford access to the demised land by automobile or other vehicle, from the public highway by which said hotel property is reached and egress therefrom in the same manner.

Lease recites:

"Section X: The lessor agrees at its own expense to install and maintain pipe-lines to the north line of the demised land from its main hotel building water system and to furnish unto the lessees through said pipe lines such water as may be needed by them for domestic purposes, and for the irrigation of flowers, shrubs, plants and trees which may be planted by them upon the demised land; and also such hot water as the lessees may require for their domestic use. The lessor further agrees that the lessees may carry electric wires upon any pole lines of the lessor so that connection may be thereby made with the feet lines of the lessor, by which such service is supplied to the lessor's hotel; and the lessees shall also have an easement for the installation and maintenance of underground conduits for telephone and electric wires from such lines of the lessor to the demised land without consideration other than that upon which this lease is based; said telephone wires to be connected with the switchboard in the hotel of the lessor. And the lessor agrees that telephone service shall always be given the lessees by such connection with its switchboard, the lessees to pay therefor the usual extension rates. A meter shall be installed to measure the electric current supplied to the lessees and they shall make payment therefor to the lessor monthly, at the same rates paid to the Southern California Edison Company or other Company supplying said hotel, and in force from time to time during the term of the lease; and always during the term of the lease the lessees shall be entitled to electric service by connection with the system by which said hotel is supplied at the actual cost thereof to the lessor.

"At the election of the lessees they shall be entitled
to the overflow water from Granite spring to irrigate their
garden and grounds, together with an easement for a pipe line
from said spring to the demised land, which pipe-line shall
be installed and placed underground by and at the expense
of the lessees.  No charge shall be made against the lessees
for said easement nor for any water rendered under any pro-
visions of this lease, and the lessor agrees to furnish such
water service without additional consideration .............

"Section XIII:  The lessor agrees with the lessees
that if any of its lands in its tract surrounding said
hotel shall hereafter, during the term of this lease, be
sold for residence purposes, then, and in such event, the
lessees shall have the right, at their election, to pur-
chase the demised land at a price per acre not greater
than the price per acre received by the lessor for the land
so sold.  The price of the land unimproved shall be the
basis of the price so to be paid, and the value of the im-
provements on the demised land shall not be considered.

"Section XV:  The main consideration moving to the
lessor for the making of this lease is the construction
upon the demised land of the improvements aforesaid, and
the resulting benefit to the lessor according to the pro-
visions hereof.  In addition to their obligations afore-
said, the lessees agree to pay the lessor rental at the
rate of One Dollar per annum from the date of the begin-
ning of the term, which payment shall be made annually
on the 30th day of June in each year hereafter until the
expiration of the term.  Failure of the lessees to pay such
installment of rental shall entitle the lessor to interest
thereon at the rate of 7% per annum, from the time when pay-
ment shall be made as herein provided, but otherwise no
penalty shall attach hereunder to default in the making
of any such payment.

"If the lessees shall fail to begin the construction
of said improvements with__ the time herein limited; or,
if after beginning such work they should fail to complete
the improvements within the designated time, then, and
in either of such events, this lease may be terminated at
the election of the lessor..........................·.....

"Section XVIII:  The covenants and agreements of the
lessor hereunder shall be deemed to run with the land....."

Arthur R. Peck and Carrie A. Peck, the lessees in this
lease are made parties defendant in this Action by reason
of their leasehold interest and option to purchase in-
volving use of that certain water as above shown.

The property was also subject to a Deed of Trust
securing a bond issue,which  Deed of Trust has since been
reconveyed.

Also apparently subject to the final determination
in that certain Action pending in the Superior Court for
San Bernardino County, entitled Del Rosa Water Company,
plaintiff, vs. Arrowhead Springs Company, et al., defen-
dant, being Action No. 18154.  Swing and Wilson, Attorneys
for the plaintiff and Byron Waters of San Bernardino was
Attorney for defendants.   This Action seeks to quiet
title in the plaintiff to 130 inches of water from East
Twin Creek.  After the joinder of the issues the Case
has lain dormant in the files while the property of both
the plaintiff and defendant  has passed to new owners.
This Action apparently arises out of the same cause of
Action as that claimed in the present case.  Should you
desire a copy of the pleadings in this Case, you will
please advise.

It must be assumed for the purpose of this report
that the deed of Cinton Andre and Dell Andre, his wife,
to Arrowhead Hot Springs Company, a corporation, dated
May 29, 1905 and recorded June 1, 1905 in Book 344, page
163 of Deeds, and conveying the North half of the North-
west quarter of Section 12, Township one North, Range
four West, together with appurtenances thereunto belong-
ing, conveyed all the interest of the grantor in and to
the diversion rights of the said Cinton Andre originating
under the Water Location Notices of Herbert J. Royer,
hereinabove referred to.  Reference to the water rights
not having been specifically set out in this instrument,
it is assumed that these rights pass as appurtenant to
the property described in said deed.

Subsequent to the recordation of the Deed from the
Arrowhead Springs Company, a corporation (Maine) to the
Arrowhead Springs Corporation, a corporation (Delaware)
the following instruments have been recorded affecting
the land or water rights above referred to:

1st:  A Licensed Land Surveyor's Map showing the
location of certain pipe lines and easements of the Arrow-
head Springs Corporation, recorded February 11, 1929 in
Book 2, Record of Surveys, page 18.

2nd:  A Notice of Sale by Arrowhead Springs Corpora-
tion, a corporation, to California Consolidated Water Com-
pany, a corporation, recorded February 18, 1929 in Book
469 of Official Records, page 91, showing notice of in-
tended sale of the water bottling and distributing business

of the vendor.  Sale to be made February 27, 1929 at the Sixth and Spring Street Office of the Los Angeles First National Trust and Savings Bank.

3rd:  The Deed from Arrowhead Springs Corporation, a corporation, (Delaware) to California Consolidated Water Company, a corporation, (Delaware), dated February 27, 1929 and recorded March 12, 1929 in Book 476 of Official Records, page 175, the property in this Deed is described as follows:-

"1.  A perpetual right and easement to use, operate, maintain, repair and replace the reservoirs, pipe lines, tunnels and collecting basins hereinafter described, together with the easement to enter and go across other property of the grantor hereinafter described, in order to use, operate, maintain, repair and replace such facilities and the other facilities hereinafter mentioned.  The reservoirs, pipe lines, tunnels and collecting basins above mentioned are described as follows:

"Water Lot No. 1 as shown and delineated on Licensed Surveyor's Map "Showing Certain Pipe Lines and Easements Arrowhead Springs Corporation", recorded in Book 2, Record of Surveys, Pages 18 and 19.

"Water Lot No. 2, as shown and delineated on said Licensed Surveyor's Map recorded in Book 2, Record of Surveys, Pages 18 and 19.

"Also the existing reservoir site and tanks as shown on said Licensed Surveyor's Map.

"Also the proposed reservoir site as shown on said Licensed Surveyor's Map.

"Also a right of way 10 feet wide for pipe line, the center line of which is designated as "Waterman Canyon Pipe Line" on said Licensed Surveyor's Map.

"Also a right of way 10 feet wide for pipe line, the center line of which is designated as "Indian Springs Pipe Line" on said Licensed Surveyor's Map.

"Also a right of way 40 feet wide for pipe line designated as "Proposed Pipe Line "B", the center line of which is the center line of Pacific Electric Railway as shown on said Licensed Surveyor's Map.

"Also a right of way 10 feet wide for pipe line, the center line of which is designated as "Proposed Pipe Line 'A' on said Licensed Surveyor's Map.

"Also a perpetual easement to lay, construct, erect, use, operate, maintain, repair and replace necessary additional reservoirs, pipe lines, tunnels, collecting basins and similar facilities as may be hereafter needed by the grantee, its successors or assigns, in, on and across other property of the grantor, hereinafter described.

"Also all pipe lines, pipe racks and loading facilities for the transportation of water from the existing collecting basins and tunnels of the grantor to Pacific Electric Railway, or elsewhere, and also all reservoirs and tanks of the grantor, now being used by it in the development and distribution of its water.

"2.  All subterranean waters in Waterman Canyon (also known as West Twin Creek) and in Strawberry and Cold Water Canyons (also known as East Twin Creek), belonging to the grantor, including all waters now being developed and produced by said grantor in said Canyons, together with such additional subterranean waters now belonging to the grantor as the grantee, its successors or assigns, may hereafter desire to develop, together with necessary rights of way for pipe lines to convey such water to the reservoirs of the grantee, its successors or assigns, and the right to go upon the premises of the grantor and erect necessary tunnels and collecting basins for the development of such water; excluding, however, all water of the grantor from surface streams and hot springs.

"3.  Also whatever rights and interest ARROWHEAD SPRINGS CORPORATION owns and possesses in water flowing from Indian Springs and in the tunnels located at and adjoining said Springs.

"4.  Also, in the event of emergency creating a shortage in the supply of water available to grantee, its successors or assigns, from the above sources of supply the right and privilege on the part of the grantee, its successors or assigns, to take hot water from any of the springs or other sources of supply owned or controlled by the grantor in such amounts and at such times as will not interfere with or interrupt the hot water uses and service of the grantor."

4th:  Trust Indenture from California Consolidated Water Company, a corporation (Delaware) to Los Angeles First National Trust and Savings Bank, a National Banking Association, as Trustee, covering all property of the California Consolidated Water Company, to secure a bonded indebtedness of $1,500,000.00, which Trust Indenture is dated March 1, 1929 and recorded March 12, 1929 in Book 475 of Official Records, page 261.

0527

     5th:  The filing of complaint in that certain Action No. 31798, in the Superior Court of San Bernardino County, entitled Del Rosa Mutual Water Company, a corporation vs., California Consumer's Corporation, et al., for the purpose of quieting title to 130 inches of water in East Twin Creek.

     6th:  An Agreement between Arrowhead Springs Corporation, a corporation (Delaware) and California Consolidated Water Company, a corporation, (Delaware) amending the provisions of the Deed recorded in Book 476 of Official Records, page 175, and certain particulars regarding the water to be developed and taken from East Twin Creek and its tributaries and the construction and maintenance of diversion works and reservoirs, which Agreement is dated August 6, 1930 and recorded August 21, 1930 in Book 648 of Official Records, page 122.  Reference to which Agreement and the record thereof is hereby made for further particulars.

- - - - - - -

     The water claims, evidences of which we find in the records, may for the purpose of this report, be classified as follows:-

     FIRST:  Water claims of Arrowhead Springs by reason of appropriation and by riparian use.  These claims have been covered by the first part of this report.

     SECOND:  Water claims of appropriators from the surface flow below the property of Arrowhead Springs.

     These are the interests growing out of the instruments, copies of which are enclosed as follows:

     (a)  Notice by John Hancock and Henry Hancock, recorded May 15, 1874 in Book "A" of Water Records, page 22.

     (b)  Notice by John Hancock, recorded February 20, 1875 in Book "A" of Water Records, page 42.

     (c)  Notice recorded by John Hancock April 12, 1875 in Book "A" of Water Records, page 52.

     (d)  Notice recorded by John Hancock, September 30, 1884 in Book "B" of Water Records, page 106.

(e)  Notice recorded by John Hancock December 18, 1884 in Book "B" of Water Records, page 141.

(f)  Notice recorded by John Hancock December 30, 1884 in Book "B" of Water Records, page 144.

(g)  Notice recorded by John Hancock January 28, 1885 in Book "B" of Water Records, page 151.

(h)  Notice recorded by Kansas City Real Estate Investment Company August 27, 1890 in Book "C" of Water Records, page 632.

(i)  Patent from United States of America to Andrew Leedom covering the Northwest quarter of the Northeast quarter and the Northeast quarter of the Northwest quarter and Lot 5, Section 15, Township one North, Range four West, dated May 5, 1904 and recorded in Book "G" of Patents, page 163.

The interest of the locators in the Location Notices and of the patentee in the Patent, (so far as the same affect that portion of Section 14, described as follows: Beginning at the Northeast corner of the Northwest quarter of the Northeast quarter of Section 14, Township one North, Range four West; thence West two hundred eight and seventy-one hundredths feet; thence South four hundred seventeen and four tenths feet to a point which is South forty-six degrees thirty minutes West one hundred twenty-seven and nine tenths feet from the Southwesterly corner of concrete sand box of Del Rosa Water Company; thence East two hundred eight and seventy-four hundredths feet; thence North four hundred seventeen and four tenths feet to the point of beginning), descends to Del Rosa Mutual Water Company with the following exceptions:

I.  That certain five inches of water from the flow of East Twin Creek, reserved to John Hancock in his Deed dated May 23, 1887 and recorded August 20, 1887 in Book 62 of Deeds, page 466, to R. H. Hunt, Charles H. Condee, C. H. Rhodes, Cyrus Newkirk, J. C. Thompson, E. A. Phillips, predecessors in interest of the Del Rosa Mutual Water Company.

We find no record of any conveyance by John Hancock of the five inches of water reserved in the Deed above referred to recorded in Book 62 of Deeds, page 466 and we know of no party other than the Del Rosa Mutual Water Company and the parties claiming under the ten inches granted to Samuel W. Little, et al., who are diverting water under the Hancock appropriations.

-11-

0529

II.  That certain ten inches of water conveyed by
R. H. Hunt, Charles H. Condee, C. H. Rhodes, Cyrus Newkirk,
J. C. Thompson, E. A. Phillips to Samuel W. Little, David
B. Alexander, Wm. H. Avery, Benson Wood, by Deed dated
April 22, 1890 and recorded December 24, 1890 in Book 122
of Deeds, page 348, being a conveyance of ten inches of
water from the waters of East Twin Creek, so long as that
Creek shall flow that amount of water.  This Deed recites
that it is made pursuant to an Agreement of Exchange bet-
ween Samuel W. Little, David B. Alexander, Wm. H. Avery,
Benson Wood and R. H. Hunt, Charles H. Condee and E. A.
Phillips, dated April 22, 1887 and recorded March 1, 1888
in Book "K" of Agreements, page 199.  This Agreement re-
corded in Book "K" of Agreements, page 199, recites that the
first parties, Samuel W. Little, et al., hold from John
Hancock, a "small interest" in the waters of East Twin Creek,
and that that interest shall be relinquished on the proper
conveyance to the first parties of ten inches of water re-
ferred to in the Agreement.  We find no specific conveyance
from John Hancock of any interest in the waters of East Twin
Creek, to said Samuel W. Little, et al., although we do find
a conveyance of a large tract of land in this vicinity, now
known as the S. W. Little Tract, but without specifically
setting out any water right as being conveyed with or ap-
purtenant to the property.

The interest conveyed to Samuel W. Little, et al.,
in the Deed recorded in Book 122 of Deeds, page 348, was
by two certain Agreements, one dated February 1, 1889 and
recorded June 28, 1890 in Book "O" of Agreements, page 280
and the other by Agreement dated December 23, 1889 and recor-
ded June 28, 1890 in Book "O" of Agreements, page 276, made
appurtenant to the property described as the S. W. Little
Tract, which Tract consists of fourteen lots aggregating
an area of 281.46 acres according to the acreage shown on
the recorded plat, and also a parcel marked "Reservoir Lot",
said to contain 4.70 acres.  Under the agreement above re-
ferred to, the Reservoir Lot and its appurtenances includ-
ing the 10 inches of water from East Twin Creek, were
divided into 281.66 parts and provision was made that one
of such parts should pass with the conveyance of each acre
of land in the Tract, except the Reservoir Lot.

By various conveyances, the title to all of the Tract
known as the S. W. Little Tract, recorded in Book 9 of Maps,
page 12, descends to Daniel J. Carpenter.  The following
persons named as defendants in Action No. 31798, derived
their interest in the Creek through Daniel J. Carpenter:

-12-

0530

George S. Mason, as to one inch of the perpetual flow of the water of the Reservoir Lot above referred to as shown on the Map of S. W. Little Tract which flow of water includes ten inches of water in constant flow from East Twin Creek, as conveyed by D. J. Carpenter and Mary I. Carpenter, his wife, to George S. Mason by Deed dated August 5, 1914 and recorded August 10, 1914 in Book 554, page 260 of Deeds, said water to be delivered not oftener than two days each month in cumulated heads, from the water of East Twin Creek, belonging to said Reservoir Lot through what is known as the Avery pipe line.

Mary E. Gleason, as to the property described as the equivalent of two-thirds of an inch of the perpetual flow of the waters of East Twin Creek, as owned by D. J. Carpenter and Mary I. Carpenter, to be delivered from what is known as the Avery pipe line in not more than three days of each month as may be agreed upon, as conveyed by D. J. Carpenter and Mary I. Carpenter, his wife, to Lamont E. Hill, by Deed dated June 13, 1913, and recorded in Book 538 of Deeds, page 134, Mary Gleason being the successor in interest through mesne conveyances, to Lamont E. Hill.

L. R. McKesson, (shown in your letter as John Doe McKasson), wife's name Nina McKesson, owner and National Thrift Corporation of America, beneficiary in Trust Deed to American National Bank of San Bernardino, Trustee, as to an interest described as follows:-

An undivided 100/281.66 part of the following described parcels lettered "A" and "B".

(a) Certain reservoir lot containing four and seventy hundredths acres as shown on Map of S. W. Little Tract. Together with all water flowing from wells and reservoir situated on said Lot.

(b) Also that certain ten inches perpetual flow of waters of East Twin Creek, all as more particularly described in Agreement recorded in Book "O" of Agreements, page 276, and that certain Agreement recorded in Book "O" of Agreements, page 280, and being a portion of those certain water rights conveyed by William H. Avery and wife, to Daniel J. Carpenter by Deed recorded in Book 409 of Deeds, page 328, and conveyed to Daniel J. Carpenter by Benson Wood and wife, by Deed recorded in Book 432 of Deeds, page 225.

-13-

EXCEPTING from the Parcels above described that certain water right described as two-thirds of one inch of the water of East Twin Creek as conveyed by Daniel J. Carpenter to Lamont E. Hill, by Deed dated June 13, 1913 and recorded in Book 538 of Deeds, page 134.

ALSO SAVING AND EXCEPTING from said Parcels one inch of perpetual flow of the water of said Reservoir Lot as conveyed by Daniel J. Carpenter and Mary I. Carpenter, his wife, to George S. Masan, by Deed dated August 5, 1924 in Book 554 of Deeds, page 260.

J. B. Jeffers and Johnie C. Jeffers, husband and wife, and E. C. Jeffers, a single man, owners and D. J. Carpenter as beneficiary in the Deed of Trust to the American National Bank of San Bernardino, as to an interest in said water described as follows:

An undivided 130.66/281.66 interest in the following described parcels:

(a)  That certain reservoir lot containing four and seventh hundredths acres, as shown on the Map of S. W. Little Tract, above described, together with all water flowing from the wells and reservoir situated on said Lot.

(b)  Also ten inches perpetual flow of the waters of East Twin Creek, more particularly described in Agreement recorded in Book "O" of Agreements, page 276, and in Agreement recorded in Book "O" of Agreements, page 280.

EXCEPTING from the Parcels above described, that certain water right described as two-thirds of one inch of the water of East Twin Creek, as conveyed by Daniel J. Carpenter to Lamont E. Hill, by Deed dated June 13, 1913 and recorded in Book 538 of Deeds, page 134.

ALSO SAVING AND EXCEPTING from said Parcels, one inch of perpetual flow of the water of said Reservoir Lot as conveyed by Daniel J. Carpenter and Mary I. Carpenter, his wife, to George S. Masan, by Deed dated August 5, 1924 in Book 554 of Deeds, page 260.

Isabel  Carpenter Turner, formerly Isabella Carpenter, as to an interest described as follows:

PIONEER TITLE INSURANCE AND TRUST COMPANY

0532

An undivided 34.23/281.66 interest in the following described parcels:

(a)  That certain reservoir lot containing four and seventy hundredths acres, as shown on the Map of S. W. Little Tract, above described, together with all water flowing from the wells and reservoir situated on said Lot.

(b)  Also ten inches perpetual flow of the waters of East Twin Creek more particularly described in Agreement recorded in Book "O" of Agreements, page 276, and in Agreement recorded in Book "O" of Agreements, page 280.

EXCEPTING from the Parcels above described, that certain water right described as two-thirds of one inch of the water of East Twin Creek as conveyed by Daniel J. Carpenter to Lamont E. Hill, by Deed dated June 13, 1913 and recorded in Book 538 of Deeds, page 134.

ALSO SAVING AND EXCEPTING from said Parcels, one inch of perpetual flow of the water of said Reservoir Lot as conveyed by Daniel J. Carpenter and Mary I. Carpenter, his wife, to George S. Masan, by Deed dated August 5, 1924 in Book 554 of Deeds, page 260.

Daniel J. Carpenter, as to any remaining interest in the ten inches of water from East Twin Creek, which were made appurtenant to the Reservoir Lot on the S. W. Little Tract by the Agreements recorded in Book "O" of Agreements, page 280 and in Book "O" of Agreements, page 276.  It is understood that Daniel J. Carpenter claims to own a portion of the reservoir lot and the water estimated to be the fraction 16.77/281.66, description being the same as of the property hereinabove shown as owned fractionally by Isabell Carpenter Turner, although the conveyances of interest in the water of this Creek as shown above vested in Mary E. Gleason and George S. Mason, together with the other conveyances listed above, would divest Daniel J. Carpenter, apparently, of all his remaining interest in said ten inches of water. The conveyances by Carpenter to the predecessors in interest of L. R. McKesson and J. B. Jeffers, et al., did not except from the conveyance the portions previously conveyed to Mason and Hill and as to such descriptions, the one and two-thirds inches may properly be eliminated in determining the fraction although for our own Policy purposes, we prefer to add the exception as a protection to this Company.

PIONEER TITLE INSURANCE AND TRUST COMPANY

0533

III. Any water in excess of that claimed in the complaint in Action No. 31798, and any interest in excess of the right to 93.16 inches 'of water, title to which 93.16 inches we find deducible from the record based on the Appropriation Notices listed above.

The chain of title to the water coming into the Del Rosa Mutual Water Company is quite an extended run starting with the above Location Notices and continuing the conveyance of "all interest" by various conveyances down into a Company known as "Kansas City Real Estate Investment Company", who subdivided a large tract of land known as the Orange Grove Tract. This Company placed a Deed of Trust on their land and water rights and proceeded to convey farm lots together with a proportionate interest in their water right which they described as 200 inches of water in East Twin Creek.

Most of the Deeds out of this Company provide for the conveyance of one inch of water to each seven acres of land conveyed, the water to be made appurtenant to the land. Following down the chain of title to the various lots conveyed by Kansas City Real Estate Investment Company, 51 Deeds in all, mentioning water rights, and following the title to the property so conveyed with water rights, we found that by 46 separate instruments the title to the water descending with the land comes vested in Del Rosa Water Company, the Company later being reorganized as Del Rosa Mutual Water Company. After 51 conveyances of land with water rights and the release of property sold from the Deed of Trust, the balance of property of the Kansas City Real Estate Investment Company was sold under foreclosure and no further mention is made of water rights in East Twin Creek by the owners of land purchased under the foreclosure.

The full 200 inches was never conveyed away piecemeal, doubtless due to the fact that that quantity of water was not continuously obtainable.

There are a few parties, as we understand it, who are still hanging on to their conveyance of inches of water from the Creek, although these parties are apparently permitting the Mutual Water Company to handle the diversion and serve them in a manner similar to their stockholders. There are many Deeds in the chain of title to the land conveyed by the Kansas City Real Estate Investment Company subsequent to the original Deed that do not specifically mention the water right and as to such instruments, it has been assumed that the water right has passed with the land conveyed as appurtenant

Should you desire copies of all of the Deeds into the Del Rosa Mutual Water Company and the Del Rosa Water Company you will so advise, although it is our experience that many of theses Deeds do not set out in the interest, but merely state a conveyance of all interest in the Creek and it has been necessary to go back and determine the number of acres of land which the party conveying owned in the Orange Grove Tract before we were able to determine the quantity of water which the conveyance represents.

-16-

We are also enclosing copies of the following in-
struments apparently covering diversions below Arrowhead
Springs.

(j)  An Agreement between George I. Burton, John
Anderson, and William H. Stones, recorded February 2,
1881 in Book "A" of Water Records, page 197.  Said
parties recite themselves to be the owners of all the
water and water rights in East Twin Creek and agree as
to the division of the water between them.  This is ap-
parently an agreement relative to what is now known as
the Stone Ditch and the source of the water in which is
a tunnel in the bed of the stream below the Del Rosa
diversion.  No search has been made as to the chain of
title nor present vesting of this property.

(k)  Notice of Appropriation by Noye Wicks, et al.,
recorded March 26, 1887 in Book "B" of Water Records, page
475.

(1)  Notice of Appropriation by Edwin A. Meserve,
recorded May 26, 1887 in Book "C" of Water Records, page
52.

Some interest of the locators in the above three in-
struments (j), (k) and (1), apparently descended to the
water company known as Alta Land and Water Company, by
Deed dated July 15, 1887 and recorded in Book 63 of Deeds,
page 114, which instrument conveyed all the interest of
Shirley C. Ward, Edwin A. Meserve, Noye Wicks and Chas. J.
Perkins, in and to the waters of East Twin Creek.

In Action No. 1684 in the District Court for San Ber-
nardino County, entitled Alta Land and Water Company,
plaintiff, vs. John Hancock, C. H. Rhodes, R. H. Hunt,
Cyrus Newkirk, J. C. Thompson, E. A. Phillips and Charles
H. Condee, defendants, a Judgment was rendered, dated
August 19, 1889 entered August 19, 1889 in Book 4 of Judg-
ments, page 294, being a Judgment for the defendants, John
Hancock, et al.  The files in this Case contain among
other things, depositions by witnesses for the defendants,
witnesses apparently being laborers who actually performed
the work of constructing ditches and diversion works for
John Hancock in the year 1874 and in the year 1875.  Re-
ference is made in the papers on file in this Action to an
Action covering similar subject matter tried in Los Angeles
County in the year 1886.  We do not have the number of the
Action.

PIONEER TITLE INSURANCE AND TRUST COMPANY

Case 5:xx-cv-xxxxx Document xx-x Filed 00/00/xx Page 19 of 31

We note also, a Case in the District Court for San
Bernardino County being Case No. 948, wherein Andrew
Leedom, George I. Burton, John Anderson, W. H. Stones,
M. Segars and L. Deck, plaintiffs, vs. John Hancock,
defendant, relative to the ownership of water diverted
below the Arrowhead Springs property. This Case was
dismissed as to Andrew Leedom. Stipulation for dismissal
reciting that the interest of Andrew Leedom had passed
to John Hancock. It is likely that the interest of the
other plaintiffs was litigated in the above Action No.
1684, but no further filings have been made in this pro-
ceeding.

THIRD: Water claims of appropriators above Arrow-
head Springs Diversion.

We are enclosing copies of the following water ap-
propriation notices by J. N. Baylis, one of the defendants
in Action No. 31798.

(a) Location recorded September 7, 1909 in Book
"H" of Water Records, page 209.

(b) Application for permit by John N. Baylis, cover-
ing one-half cubic feet per second from the spring tribu-
tary to Strawberry Creek, filed as Document #16 in the
office of the County Recorder on April 21, 1919.

(c) Permit #667 for the diversion of one-half cubic
feet per second from a spring tributary to Strawberry
Creek for use on Section 25, Township two North, Range
two West, recorded as Document #1 in the office of the
County Recorder on January 8, 1920. The water represented
by these instruments is evidently diverted for use on
mountain resort property known as Pine Crest.

(d) We are also enclosing a copy of Water Appropriation
Notice by E. H. Neuls and Thomas Mapstead recorded April 8,
1912 in Book "H" of Water Records, page 337. No attempt
has been made to run down this location. It apparently
covers a diversion high up in the mountains.

(e) We are also enclosing copies of instruments as
follows:

Three Location Notices made by the Sextette Mining
Company. If these instruments affect this water in any
way, its diversion is above the Arrowhead Springs prop-
erty. No search has been made covering the interest of
the locators and we have incidentally noticed nothing
further in the record respecting the interest of the
parties named in the Location Notices.

PIONEER TITLE INSURANCE AND TRUST COMPANY

0536

FOURTH:  Lower riparian claims and claims to under
flow and percolating water and storm water for storage.

Ellen A. McLaughlin, one of the defendants named
in Action No. 31798, is the owner of the balance of prop-
erty described in the Patent from United States of America
to Andrew Leedom, recorded in Book "G" of Patents, page
163, above referred to not conveyed to the Del Rosa Water
Company.  This property is apparently riparian to the
stream.  The chain of title to this property does not
indicate the use of East Twin Creek Water on the property.

Nettie D. Phillips is apparently the owner of parcel
of land described as Lot 1, Section 14, Township one North,
Range four West, lying East of the West bank of East Twin
Creek.  Property was acquired by Nettie D. Phillips under
a Decree dated March 27, 1930; said Decree being in the
nature of a Decree quieting title under a 20 year adverse
claim.  The chain of title does not indicate any use of
East Twin Creek water on the property.

The City of San Bernardino are the owners of the
property riparian to the stream in the Muscupiabe Rancho
and are prosecuting a program of water conservation in
this district.

In our study of the chain of title of water rights
in East Twin Creek, we have observed no interest coming
into the parties named as C. M. Crist and Great View Water
Company, although it is believed that these parties may
have some interest in diversions for mountain resort
property.

Since it has been difficult to separate the search
on the property of the three principal defendants named
in your letter and the other parties to the Action, we
have thought it best to bring them all down in this form
and are consequently adjusting the price quoted to you
in Mr. Mack's letter of September 10, 1930.

Very truly yours,

J.W. MUIR,
Title Examiner.

JWM:J
Encl.

-19-

0537

## INDEX OF ENCLOSURES

| Instrument | Book | Page | First Party | Second Party |
|---|---|---|---|---|
| Possessory Claim | A | 75 | Smith, D. N. | |
| Patent | B | 91 | United States | Smith, David Noble |
| Patent | B | 573 | United States | Smith, David Noble |
| Water Notice | B | 476 | Arrowhead Hot Springs Hotel Company | |
| Notice | C | 40 | Do | |
| Notice | C | 22 | Do | |
| Amended Notice | C | 296 | Do | |
| Amended Notice | C | 298 | Do | |
| Patent | C | 338 | United States | Elder, Thomas B. |
| Notice | D | 312 | Herbert J. Royer | |
| Notice | D | 313 | Do | |
| Patent | C | 374 | United States | Benjamin F. Coulter, et al. |
| Notice | D | 133 | Herbert J. Royer | |
| Patent | E | 386 | United States | S.P. R.R.Co |
| Patent | G | 63 | Do | Herbert J. Royer |
| Water Notice | A | 22 | Hancock, John and Henry | |
| Water Notice | A | 42 | Hancock, John | |
| Notice | A | 52 | Do | |
| Water Notice | B | 106 | Do | |
| Water Notice | B | 141 | Do | |
| Water Notice | B | 144 | Do | |
| Water Notice | B | 151 | Do | |
| Water Location Notice | C | 632 | Kansas City Real Estate Investment Company | |
| Patent | G | 163 | United States | Andrew Leedom |
| Notice | A | 197 | George I. Burton, et al. | |
| Notice | B | 475 | Noye Wicks, et al | |
| Notice | C | 52 | Edwin A. Meserve | |
| Water Notice | H | 209 | Elvira L. Baylis and J. N. Baylis | |
| Application for permit to appropriate unappropriated waters | | | Do | |
| Do | | | Do | |
| Water Notice | H | 337 | E. H. Neuls Thos. Mapstead | |
| Water Notice | H | 70 | Sextet Mining Co | |
| Water Notice | H | 82 | Do | |
| Water Notice | H | 89 | Do | |

#25338
PIONEER TITLE INSURANCE AND TRUST COMPANY

0538
(1)

COPY OF BOOK "A" POSSESSORY CLAIMS, PAGE 75

STATE OF CALIFORNIA     )
                        )
SAN BERNARDINO COUNTY   )

    D. N. Smith being duly sworn says that he is a citizen
of the United States, settled upon occupying and claiming
the following described public lands with intention of
holding the same as a possessory claim under the act of
the Legislature of California of April 20th 1852, and also
of securing it as a homestead, as soon as surveyed by
government under the provisions of the Act of Congress of
May 20th, 1862, to-wit:-  Situated on East Twin Creek, about
6 miles North 17° East of San Bernardino in the County of
San Bernardino, embracing the table land and hot springs at
the foot of Arrowhead Mountains, commonly known as the
"Ace of Spades" and the bottom land and wash of said Creek
from a little below the mouth of "Hot Canon" up to the
mark hereinafter specified in survey of lines said
tract embracing the hot canon and the springey and brush-
less land on the West or right bank of said canon
immediately below the main forks formerly located im-
proved and abondoned by Wagoner also the springs and grassy
plot surrounding the hot springs on the East or left bank
of said canon formerly located improved and abandoned by
John Brown Esq-

    The lines of said tract of land are as follows commen-
cing at a stone set in the ground marked X on a little
knole at the forks of the first dry canon west of the
brushless plat on the right bank of Hot Canon, and running
North 63° East, to a rock mound on a line from the East
Hot Springs to the lower point of the Arrowhead
marked on the mountains, thence South 69° East to a rock
marked X on a bluff point above wood Road, thence North
35° and 3 minutes East to a bunch of green
bushes or rock marked X on the left bank of East Twin
Creek thence following down the left bank of the foot
of the mountain in a general bearing South 52° 30' West to
a rock marked X at little below the mouth of Hot Creek,
thence North 24° 30' West on the West bank of Hot Creek to
its junction with dry fork following up the West bank of
the latter to point of beginninb.

    Deponenent further says that said boundary lines
do not embrace more than one hundred and sixty (160)
acres of land.  That he has taken no other claim under
said act of April 20th, 1852, and to the best of his know-
ledge and belief that the said lands are not claimed
under any existing title and that he has already put real
improvement thereon to the value of over two hundred
dollars.

                        D. N. SMITH

0539

Subscribed and sworn to
before me this 11th day of
March A. D. 1865

       H. C. ROLFE
      Notary Public.


   I hereby certify the foregoing to be a true, full
and correct copy of the original filed for record March
1865 and recorded March 21st A. D. 1865, 11 o'clock A. M.

      A. F. Mc KENNEY
           Recorder

     By HENRY WILKES
           Deputy.

(5)

0544

COPY OF BOOK "C" OF WATER RECORDS, PAGE 40.

NOTICE

    The undersigned corporation claims the water
here flowing or to flow in this Strawberry Canon
(being the North west fork of Twin Creeks in Town-
ship one North Range four West San Bernardino Base
and Meridian to the extent of one hundred and forty
inches measured under a four inch pressure for
irrigation domestic, mechanical, manufacturing,
bathing and medical purposes upon its lands in the
Township and Range above mentioned to which the said
water is to be conveyed from this the point of
diversion through a flume twelve by twelve inches
for the first 30 or 40 feet and thence by iron pipe
diameter ten inches  to seven inches diameter at
the point of use.

    Done at Arrowhead Hot Springs Cal May 5th, A. D .
1887

        The Arrowhead Hot Springs Hotel Company
        By. A. F. Coulter
(CORPORATE         President
  SEAL)


A. B. Chapman
     Acting Secretary

A full true and a correct copy of the original
Recorded at the request of  R. R. Darby, May 7th
A. D. 1887 at 2:50 o'clock P. M.

           Legare Allen
            County Recorder
        By  O. J. Treen
           Deputy

PIONEER TITLE INSURANCE AND TRUST COMPANY

COPY OF BOOK "C" OF WATER RECORDS, PAGE 22.

### NOTICE

The undersigned corporation claims the water
here flowing or to flow in this Strawberry Canyon
being the North West fork of Twin Creeks in Township
one North of Range four West, San Bernardino Base and
Meridian to the extent of one hundred and fourty
four inches measured under a four inch pressure for
irrigation, domestic, mechanical manufacturing,
bathing and medical purposes upon its lands in the
Township and range above mentioned to which
said water is to be conveyed from this point of di-
vision through a flume twelve by twelve inches for
the first 30 or 40 feet and thence by iron pipe diameter
ten inches to seven inches diameter at the point of
use.

Done at Arrowhead Hot Springs Cal. May 5th 1887.
The Arrowhead Hot Springs Hotel Company
By B. F. Coulter President

(CORPORATE SEAL)

A. B. Chapman
    Acting Secretary
State of  California    )
County of San Bernardino )

R. R. Darby being first duly sworn deposes and
says that on the 5th day of May 1887 he posted a
notice of which the foregoing is true copy in a con-
spicuous place in Straberry Canon at the place of
intended division as stated in said notice to wit
at the point in said Canyon where the water in said
Canyon is now diverted by means of a flume (in said
County and State).

Subscribed and  Sworn to before me       R. R. Darby
this 9th day of May 1887   (NOTARIAL SEAL)
    W. J. Curtis
    Notary Public

A full true and correct copy of the original Recorded
at the request of  R. R. Darby
May 9th A. D. 1887 at 1:00 o'clock P. M.
                    Legare Allen
                      County Recorder
                By O. J. Treen
                    Deputy

PIONEER TITLE INSURANCE AND TRUST COMPANY

COPY OF BOOK "C" OF WATER RECORDS, PAGE 296

## AMENDED NOTICE OF APPROPRIATION OF WATER

Notice is hereby given, that the Arrowhead Hot Springs
Hotel Company, a corporation, has appropriated and
desires to continue to appropriate and does claim the
water flowing and to flow at the point where this
notice is posted, to wit:  In the Canon known as Cold
Canon and also as Strawberry Creek at the upper end of
a rocky precipice on the Westerly side of said Canon
where it changes  from a westerly to a southerly course,
about one eighth of a mile above the house in said
Canon where D. N. Smith resided at the time of his
death, March 14th, 1885, a recess in said precipice
known as the Grotto being on one side and a large
bouders on the other side of the exact point of diversion
situate in the South east quarter of the North west
quarter of Section twelve in Township one north,
Range four West, San Bernardino Base and Meridian, to
the extent of Seventy two inches measured under a
four inch pressure.  That the purposes for which said
Arrowhead H t Springs Hotel Company claims said water
are for domestic and irrigating purposes.  That the
place of intended use of said water is upon lands
belonging to said Arrowhead Hot Springs Hotel
Company, to-wit:  The South half of the North west
quarter and the Northwest quarter of the South west
quarter of Section twelve, Township one North, Range
four West,  San Bernardino Base and Meridian, and
upon such lands adjoining as said Corporation shall
hereafter acquire.   That the means by which said
Arrowhead Hot Springs Hotel Company has diverted and
intends to continue to divert said water, is first,
by an ordinary dam of earth, brush and stone; thence
along west side of said canon as follows; a ditch 2
feet wide, and 2 feet deep for 120 feet, or thereabout
a wooden flume of a v shape, sides 18 inches each,
depth 14 inches, 2 feet  wide at top and about 250
feet long, builded along and against the rocky wall
on west side of said canon; thence a ditch about 350
feet long to place of intended use at and beyond
the said house where D. N. Smith resided as above
recited. General Course of said line being South
Westerly, and it and said dam being such as are at
present constructed and existing at the point of
diversion and by means whereof said water is at
present diverted and conducted to and upon the said
particularly described lands.

Dated November 21st of A. D. 1887.

(SEAL) ·                The Arrowhead Hot Springs Hotel Company,
                            By J. W. Gillette, Secretary.

State of California.       )
                           ) SS
County of San Bernardino.  )

J. W. GILLETTE, being duly sworn, says that
he is now and the time hereinafter mentioned,was a white
male citizen of the United States and a resident of
the State  of California, over  the age of twenty
one years, and Secretary of the Board of Directors
of the Arrowhead Hot Springs Hotel Company, the cor-
poration named in the within notice.  That on the 25

PIONEER TITLE INSURANCE AND TRUST COMPANY

0547

day of November, A. D. 1887, pursuant to a resolution
of the said Board of Directors, he posted a notice in
writing signed by said Corporation by affiant as
Secretary thereof and under the seal of said Corporation,
of which notice the foregoing is a full, true and
correct copy upon the South side of an Alder tree
of about 2 feet diameter that grows about 12 feet
easterly of said point of diversion, about 4½ feet
above the roots of said tree.  Said notice being
enclosed to protect it from rain (the front being pro
tected by glass) and perfectly legible; being at the
point  of intended diversion mentioned in said notice
and where the water mentioned in said notice was
actually diverted on said day.  Said notice being so
posted in a conspicuous place as to be easily seen and
read by any person passing said point.

                         J. W. Gillette

Subscribed and sworn to before me this thirtieth day
of November A. D. 1887.
                    (SEAL)
                         Legare Allen, County Recorder

A full, true and correct copy of the original
Recorded at request of J. W. Gillette. Nov. 30th
1887, at 9:55 A. M.

                         Legare Allen, County Recorder
                         By T. J. Bolton Jr., Deputy

0548 (8)

COPY OF BOOK "C" OF WATER RECORDS, PAGE 298

AMENDED NOTICE OF APPROPRIATION OF WATER.

Notice is hereby given that the Arrowhead Hot
Springs Hotel Company, a corporation, has appropriated
and desires to continue to appropriate and does claim
the water flowing and to flow at the point where this
notice is posted, to-wit:  At a point of rocks on the
West side (as the Canon there runs) of the Canon
commonly known as Cold Canon, and also as Strawberry
Creek, distant 20 feet from a blazed oak tree two feet
in diameter growing on top of same rocky point a short
distance from North line of Section twelve, Township
one North, Range four West, San Bernardino Base and
Meridian, to the extent of seventy two inches measured
under a four inch pressure.  That the purposes for which
said Arrowhead Hot Springs Hotel Company claims said water
are for domestic, irrigating, bathing and manufacturing
purposes.  That the place of intended use of said water
is upon lands belonging to said Arrowhead Hot Springs
Hotel Company, to-wit:  the east half of the Southeast
quarter and the southeast quarter of the North east
of Sect on Eleven, and the North West quarter of the
Southwest quarter, the South half of the North
West quarter and West half of North East  quarter of
Section Twelve, all in Township one north, Range 4 West,
San Bernardino Base and Meridian, and upon such lands
adjoining as said Corporation shall hereafter acquire.
That the means by which said Arrowhead Hot Springs Hotel
Company has diverted and intends  to continue to divert
said water, is as follows;  An ordinary dam of earth, brush
and stone; thence along north west side of said Canon
by a wooden flume 104 feet long, 12 inches wide, 10
inches deep, (with waste way emptying into bed of creek)
then a sand box 12 feet long, 4 feet wide, 4 feet deep,
thence by iron pipe as follows; 10 inches in diameter
for first 28 feet, 7 inches diameter for about 6500 feet
to road from Bridge over Hot Canon to Arrowhead Hot
Springs Hotel, and thence through iron pipes 4 inches
in diameter directly applied to said purposes.  General
course of said line is South Westerly, and it and said
dam being such as are at present constructed and existing
at the point of diversion, and by which said water is di-
verted and conducted to and upon said particularly de-
scribed lands.

        Dated November 21st A. D. 1887.
(CORPORATE SEAL)                The Arrowhead Hot Springs
                                      Hotel Company
                           By J. W. Gillette, Secretary

STATE OF CALIFORNIA     )
                        ) SS
COUNTY OF SAN BERNARDINO)

    J. W. Gillette being duly sworn says, that he is
now and at the times hereinafter mentioned was a white
male citizen of the United States and a resident of the
State of California, over the age of twenty-one years
and Secretary of the Board of Directors of the

0549

ArrowheadHot Springs Hotel Company, the Corporation
named in the within notice.  That on the 25th day of
November .. D. 1887, pursuant to a resolution of the said
Board of Directors, he posted a notice in writing signed
by the said corporation, by official as secretary thereof and
under the seal of said Corporation of which notice the
foregoing is a full, true and correct copy upon
2 x 4 inch pine post attached to said flume 4½ feet
above the same, 6 feet from where water enters, and
about opposite said tree.  Said notice being enclosed to
protect it from rain, (the  front being protected by
glass) and perfectly legible, being at the intended point
of diversion mentioned in said notice and where the water
mentioned in said notice was actually diverted on said
day.  Said notice being so posted in a conspicuous place
as to be easily seen and read by any person passing said
point.

> J. W. Gillette,
Subscribed and sworn to before me this thirtieth day of
November A. D. 1887.

> (SEAL)
> Legare Allen, County Recorder

A full, true and correct copy of the original Recorded
at request of J. W. Gillette, Nov. 30th, 1887 at 9:50
A. M.

> Legare Allen,
> County Recorder

> By J. T. Bolton Jr.,
> Deputy.

PIONEER TITLE INSURANCE AND TRUST COMPANY

Page 12

COPY OF BOOK "C" OF PATENTS, PAGE 338     0550

THE UNITED STATES OF AMERICA

CERTIFICATE     )     TO ALL TO WHOM these presents
No. 1435        )     shall come, Greeting.

WHEREAS Thomas B. Elder, of San Bernardino
County, California, has deposited in the General Land
Office of the United States., a Certificate of the
Register of the Land Office at Los Angeles, California,
whereby it appears that full payment has been made by
the said Thomas B. Elder according to the provisions
of the Act of Congress of the 24th of April, 1820,
entitled "An Act making further provisions for the sale
of the Public Lands" and the Acts supplemental thereto,
for the South half of the Northwest quarter and the West
half of the Northeast quarter of Section twelve in
township one, North of range four West of San Bernardino
Meridian in California, containing one hundred and sixty
acres, according to the Official Plat of the Survey
of the said Lands returned to the General Land Office
by the Surveyor General, which said Tract has been pur-
chased by the said Thomas B. Elder.

Now, know ye, that the United States of America,
in consideration of the premises, and in conformity
with the several Acts of Congress in such case made
and provided. Have given and granted and by
these presents do give and grant unto the said Thomas
B. Elder, and to his heirs, the said Tract above
described.  To have and to hold the same, together
with all the rights, priveleges, immunities and
appurtenants of whatsoever nature thereunto belonging,
unto the said Thomas  B.  Elder and to his heirs and
assigns forever; subject to any vested and accrued
water rights for mining agricultural, manufacturing,
or other purposes, and rights to ditches and reser-
voirs used in connection with such water rights, as may
be recognized and acknowledged by the local customs,
laws and decisions of Courts, and also subject to the
right of the proprietor of a vein or lode to extract
and remove his ore therefrom, should the same be found
to penetrate or intersect the premises hereby granted,
as provided by law.

In testimony whereof I, Grover Cleveland,
President of the United States of America, have caused these
letters to be made Patent, and the Seal of the General
Land Office to be hereunto affixed.

Given under my hand at the City of Washington,
the Sixth day of October, in the year of our Lord one
thousand eight hundred and eighty eight and of the
Independence of the United States the one hundred
and thirtienth

By the President            By M. Mc Kean
   Grover Cleveland            Secretary

0551

Robert W. Ross,

Recorder of the General Land Office, Recorded
Cal. 4, Page 284.

A full, true and correct copy of the original,
recorded at request of Arrowhead HOt Springs Hotel
Company, April 15th, 1889, at 11.21 A. M.

A. S. DAVIDSON,
County Recorder
By E. Mulcaly,
Deputy.

PIONEER TITLE INSURANCE AND TRUST COMPANY