# EXHIBIT 13

**STATE OF CALIFORNIA
CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY
STATE WATER RESOURCES CONTROL BOARD**

**ORDER WR 2023-0042**

_____

**In the matter of the draft cease and desist order to**

**BlueTriton Brands, Inc.
(successor to Nestlé Waters North America, Inc.)**

**issued by the State Water Resources Control Board,
Division of Water Rights, Permitting and Enforcement Branch,
on April 23, 2021**

The Division's Enforcement Section provided this notice in this proceeding by transmitting the draft CDO and revised report of investigation to BlueTriton. (See section 2.1.)

Because this statute uses the language "would tend to show," the required notice does not need to provide every detail about the Division's factual and legal analyses, and the Board may adopt a final CDO that contains different factual and legal analyses. Nevertheless, this statute does require the Division to notify the respondent of the basic facts of each alleged violation that the Board's final CDO then will address.

In this proceeding, the Division's draft CDO and revised report of investigation did not allege that BlueTriton's diversions through Boreholes 10, 11 and 12 were unauthorized diversions. Absent such allegations, these documents did not provide sufficient notice to BlueTriton under Water Code section 1834, subdivision (a), for us to be authorized to issue a CDO to BlueTriton regarding these diversions. We therefore deny the request in the Prosecution Team's closing brief for us to issue such a CDO. This denial is without prejudice to the Division's rights to conduct further investigations regarding these diversions, or to issue a new draft CDO regarding them.

### 3.9   Appropriate Cease-and-Desist Order Terms

As discussed in section 3.8, we conclude that we should issue a CDO directing BlueTriton to stop its diversions through Tunnels 2 and 3 and Boreholes 1, 1A, 7, 7A, 7B, 7C and 8 for its beneficial uses. As discussed in section 3.7.1, we accept the position of the Prosecution Team and BlueTriton that the San Manuel Band has riparian rights that authorize diversions through these facilities for beneficial uses on the Arrowhead Springs Hotel property. As discussed in section 3.8, we conclude that we

should not issue a CDO regarding BlueTriton's diversions through Boreholes 10, 11 and 12.[47]

Based on these conclusions and the position of the Prosecution Team and BlueTriton on the San Manuel Band riparian rights issue, our CDO limits the amount of BlueTriton's total diversions from Tunnels 2 and 3 and Boreholes 1, 1A, 7, 7A, 7B, 7C and 8 during each day to the amount BlueTriton delivers to the San Manuel Band on the same day. The CDO also contains provisions requiring BlueTriton to report its daily diversions and deliveries to the Division's Enforcement Section each month, and to include copies of these reports in BlueTriton's annual groundwater extraction notices.[48]

Citing Water Code section 1051, the Prosecution Team's closing brief to the AHO argued that the Board may order BlueTriton to conduct technical studies and to provide additional information regarding the amounts of developed water, if any, BlueTriton diverts and uses. (2022-08-05 Prosecution Team closing brief, p. 29:13-22.) BlueTriton argued that the State Water Board does not have authority to require BlueTriton to conduct such studies. (2022-08-05 BlueTriton closing brief, pp. 29:24--30:5.)

The Prosecution Team did not specifically ask the AHO to include any requirements for such studies in this order. (See 2022-08-05 Prosecution Team closing brief, p. 29:13-

---

[47] BlueTriton's groundwater extraction statements indicate that, during 2018-2020, BlueTriton diverted 23, 32 and 30 af from Spring 10, and diverted 1, 11 and 8 af from Spring 12. (See Table 1.) These amounts total 24, 43 and 38 af. These totals equal 7.8, 14.0 and 12.4 mgal. (24 mgal./(3.07 af/mgal. = 7.8 mgal.; 43 mgal./(3.07 af/mgal.) = 14.0 mgal.; 38 af/(3.07 af/mgal.) = 12.4 mgal.)

[48] During the AHO hearing, Mr. Lawrence testified that BlueTriton presently files its reports under Water Code sections 4999-5009 with the San Bernardino Valley MWD. (Exh. BTB-10, p. 6, ¶ 24.)

The Division should investigate whether, considering this order, these reports will satisfy the requirements of Water Code sections 5100-5107. (See Wat. Code, § 5101, subd. (a)(5).) If the Division concludes that these reports do not satisfy these requirements, then the Division shall notify BlueTriton of this conclusion and direct BlueTriton to begin to file statements of water diversion and use under these statutes. Our order includes a provision that will apply if BlueTriton begins filing such statements and stops filing reports under Water Code sections 4999-5009.

22.) Also, while Water Code section 1051, subdivision (a), authorizes the Board to investigate stream systems, it does not expressly authorize the Board to require other parties to conduct such investigations. For these reasons, we are not directing BlueTriton to conduct any technical studies. If the Division decides to further investigate BlueTriton's diversions through Boreholes 10, 11 and 12, then the Division may use its investigation powers to require BlueTriton to produce relevant information and documents.

### 3.10   BlueTriton's Options for Future Water-Right Applications

As discussed in section 2.11, the Board, through Orders WR 89-25, WR 91-07 and WR 98-08, has issued a declaration under Water Code section 1205 that the Santa Ana River watershed, including all tributaries where hydraulic continuity exists, is fully appropriated from January 1 to December 31 of each year. Order WR 98-08 contains an exception to this declaration for applications proposing to develop or salvage water. (Order WR 98-08, pp. 16, 25.)

Under Water Code section 1206, subdivisions (a) and (b), the Board may not accept for filing any application for a permit to appropriate water from a stream system described in this declaration, except where the declaration specifies conditions for acceptance of such applications. Considering the provisions of the orders discussed in the preceding paragraph, section 1206 does not prohibit the Board from accepting applications by BlueTriton for permits to appropriate water through Tunnels 2 and 3 and Boreholes 1, 1A, 7, 7A, 7B, 7C and 8, if the applications are for permits for which diversions would be limited to times when BlueTriton can demonstrate there is no hydraulic continuity between Strawberry Creek and the Santa Ana River. Section 1206 also does not prohibit the Board from accepting applications by BlueTriton for permits to appropriate water that BlueTriton can demonstrate is developed water.

If BlueTriton decides to file any such applications, then BlueTriton should file separate applications for each source for which BlueTriton seeks a permit. If BlueTriton contends, for any such source, that there are flows based on pre-development conditions at the spring associated with the source, and additional flows due to developed water, then

88

BlueTriton should file separate applications for permits to appropriate each type of water from that source. Specifically, for each such source, BlueTriton should file: (a) one application for a permit to appropriate the water that BlueTriton contends is based on pre-development flows and is available during times when BlueTriton contends there is no hydraulic continuity between Strawberry Creek and the Santa Ana River, and (b) a separate application for a permit to appropriate the water that BlueTriton contends is developed water.

These applications will be subject to all the statutes, regulations and procedures that apply to applications for permits to appropriate water. As the Division processes these applications, and, if necessary, when the Board considers these applications, they will evaluate any issues that arise regarding the amounts of water that are based on pre-development flows, the conditions under which there is no hydraulic continuity between Strawberry Creek and the Santa Ana River, and the amounts of developed water. The Division and, if necessary, the Board, may include terms and conditions in the permits to address these issues.

As authorized by Water Code section 1205, subdivision (c), BlueTriton may file a petition to revoke or revise the fully appropriated declaration for the Santa Ana River watershed.

**4.0   CONCLUSIONS**

1. BlueTriton's diversions of water through its Tunnels 2 and 3, and its Boreholes 1, 1A, 7, 7A, 7B, 7C and 8, for its beneficial uses are subject to the State Water Board's water-right permitting and enforcement authorities.
2. BlueTriton does not have any water rights that authorize such diversions or beneficial uses.
3. Because the Prosecution Team and BlueTriton both have taken the position in this proceeding that the San Manuel Band has riparian rights that authorize BlueTriton to divert water through its facilities for deliveries to the San Manuel Band for riparian uses on the Arrowhead Springs Hotel property, this order does not prohibit BlueTriton from diverting water from Tunnels 2 and 3 and Boreholes

89

1, 1A, 7, 7A, 7B, 7C and 8 for deliveries to the San Manuel Band under BlueTriton's contractual obligations to the San Manuel Band, subject to BlueTriton's Special Use Permit from the San Bernardino National Forest and all applicable laws. This order does not adjudicate the San Manuel Band's land or riparian right claims, and this order does not limit the Board or any other regulatory agency or court from taking any future actions regarding these claims.

4. We should issue a cease-and-desist order that prohibits BlueTriton from diverting water through these facilities for any purpose besides delivering water to the San Manuel Band for its beneficial uses on the Arrowhead Springs Hotel property.

5. Our cease-and-desist order should require BlueTriton to file records of its daily diversions and deliveries that are sufficient to demonstrate its compliance with this order.

6. Because the Division of Water Rights Enforcement Section's draft cease-and-desist order did not contain any provisions that would have prohibited BlueTriton from diverting water through its Boreholes 10, 11 and 12, this order does not contain any such prohibitions. The Enforcement Section may investigate such diversions and, if it deems it appropriate, prepare a new draft cease-and-desist order regarding those diversions.

7. We should deny BlueTriton's August 11, 2023 motion to disregard and strike the July 7, 2023 amended proposed order.

# ORDER

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to Water Code sections 1831-1836, the Respondent, BlueTriton Brands, Inc., and any successor owner of any of the facilities in the Strawberry Creek watershed in San Bernardino County that are described in this order (collectively referred to in the following paragraphs as "BlueTriton"), shall comply with the following orders, beginning on the first day of the second month following the month during which the Board adopted this order:

    a. BlueTriton shall limit its diversions through its Tunnels 2, 3 and 7, and Boreholes 1, 1A, 7, 7A, 7B, 7C and 8, so that the total amount diverted through these

facilities during each day will not exceed the total amount of water BlueTriton delivers to the San Manuel Band of Mission Indians (San Manuel Band) for its riparian uses during the same day. If necessary to account for time lags between the times of these daily diversions and the times of these daily deliveries, BlueTriton may provide for an appropriate difference between the times of the daily accountings of these diversions and the times of the daily accountings of these deliveries. BlueTriton shall bypass at the portal of each tunnel or borehole, and not divert into its water-conveyance pipeline at that portal, any flow from the tunnel or borehole at the portal that exceeds the amount that BlueTriton is diverting at the portal into its water-conveyance pipeline for deliveries to the San Manuel Band.

b. On or before the 15th day of each month, BlueTriton shall provide the Division of Water Rights (Division) Enforcement Section (Enforcement Section) with separate accountings of: (i) the daily amounts of diversions at each of the facilities described in the preceding paragraph; (ii) the total daily amounts of diversions by all these facilities; (iii) the daily amounts of deliveries to the San Manuel Band for its riparian uses; (iv) the daily amounts of water diverted at each of Boreholes 10, 11 and 12; (v) the daily amounts of the total diversions at Boreholes 10, 11 and 12; (vi) the daily amounts of water delivered to tank trucks from BlueTriton's facilities described in this order; (vii) the daily amounts of water discharged to Strawberry Creek through BlueTriton's discharge facility near Boreholes 10, 11 and 12; and (viii) the daily amounts of water discharged or delivered anywhere else, with a description of each point of discharge and each point of delivery. These accountings of daily diversions, deliveries and discharges shall be sufficient to account for all diverted water. If there are any differences between the total amounts diverted on any day and the total amounts delivered and discharged on the same day, then BlueTriton shall explain the reason or reasons for the differences. BlueTriton and the Division may agree in writing to change the reporting frequency for these accountings, or to amend or terminate the requirements of this paragraph.

c. BlueTriton shall maintain totalizing flow meters and meter records sufficient to create the daily records of diversions, deliveries and discharges described in the preceding paragraph.

d. BlueTriton shall include copies of the accountings described in paragraph b. with each annual groundwater extraction notice it files pursuant to Water Code sections 4999-5009 for any of the facilities described in the preceding paragraphs. If BlueTriton begins filing statements of water diversion and use under Water Code sections 5100-5107 and stops filing groundwater extraction notices under Water Code sections 4999-5009, then BlueTriton and the Division may agree in writing to change the requirements of this paragraph so they will provide for BlueTriton to file copies of these accountings with its statements of water diversion and use.

e. Upon request from the Enforcement Section to determine compliance with this order, BlueTriton: (i) shall provide any information or documents that the Enforcement Section requests to investigate BlueTriton's compliance; and

(ii) shall provide reasonable access to Enforcement Section personnel to inspect BlueTriton's facilities and records.

f. We deny BlueTriton's August 11, 2023 motion to disregard and strike the July 7, 2023 amended proposed order.

## CERTIFICATION

The undersigned, Clerk to the Board, does hereby certify that the foregoing is a full, true, and correct copy of an order duly and regularly adopted at a meeting of the State Water Resources Control Board held on September 19, 2023.

AYE:       Chair E. Joaquin Esquivel
           Board Member Sean Maguire
           Board Member Laurel Firestone
           Board Member Nichole Morgan
NAY:       None
ABSENT:    Vice Chair Dorene D'Adamo
ABSTAIN:   None

_Courtney Tyler_
Courtney Tyler
Clerk to the Board