# EXHIBIT 22



| | | | |
|---|---|---|---|
| United States Department of Agriculture | Forest Service | San Bernardino National Forest Supervisor's Office | 602 S Tippecanoe Ave San Bernardino, CA  92408 909-382-2600 TDD: 1-800-735-2922 |

**File Code:** 2700                    **Date:** July 26, 2024

Louis Mixon, III
Senior Natural Resource Manager
BlueTriton Brands, Inc
4718 Mountain Creek Parkway
Dallas, TX 75236

Subject: Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503

Dear Mr. Mixon,

Thank you for your latest correspondence dated July 1, 2024. After careful consideration and review of the information provided by BlueTriton, I regret to inform you that your application dated February 21, 2023, for use and occupancy of lands and resources of the San Bernardino National Forest (SBNF), has been denied. As a consequence of this denial, BlueTriton's current permit terminates, and it must cease operations on SBNF lands as explained below.

This decision was made after our extended correspondence and exchange of information over multiple permit terms. (For the sake of clarity, I attach to this letter BlueTriton's most recent permit, as well as our significant correspondence of the last several months).  The Forest Service repeatedly requested BlueTriton provide additional information necessary to assure compliance with BlueTriton's existing permit, and evaluate BlueTriton's application for a new permit. Several of our requests, particularly those concerning the use of the water being taken from SBNF lands, were consistently left unanswered by BlueTriton. As we repeatedly explained, this information was necessary to evaluate compliance with your current permit, and to provide adequate information to consider your application. BlueTriton's refusal to provide the information provides us no alternative to denying your application. Pursuant to the terms of BlueTriton's prior special use permit (FCD728503), that permit is now terminated as a result of this denial. (See paragraphs I.C. and VII.D. of the permit).

As both your prior permit indicated (see paragraph I.D. of the permit), and our regulations make clear (36 C.F.R. § 251.64), the decision of whether to issue a new special use authorization upon the expiration of an existing special use is subject to the Authorized Officer's sole discretion. Factors guiding my exercise of discretion include:

1.) *The use must conform to the Forest Land and Resource Management Plan as well as applicable laws and regulations.*

As an initial matter, BlueTriton's application has not sufficiently demonstrated that standards 45 and 46 of the Forest Land Management Plan (LMP) have been met. These are:

> 45.) *All construction, reconstruction, operation and maintenance of tunnels on National Forest System lands shall use practices that minimize adverse effects on groundwater aquifers and their surface expressions.*

> 46.) *Surface water diversions and groundwater extractions, including wells and spring developments will only be authorized when it is demonstrated by the user, and/or agreed to by*

 

*the Forest Service, that the water extracted is excess to the current and reasonably foreseeable future needs of forest resources.*

Both BlueTriton's application materials and its subsequent correspondence recognize that conditions in Strawberry Canyon have significantly changed since our last evaluation in 2018. Given these changing circumstances, BlueTriton's application materials are insufficient to demonstrate compliance with the current Land Management Plan.

Of greater concern, as I explained in my prior correspondence, is that BlueTriton refuses to provide sufficient information about the uses of the waters being taken from the SBNF to assure that they are in compliance with California law. Compliance with State law in regards to water rights and uses is a precondition to the issuance of any special use permit.

### 2.) *The purpose of the use must be the same for which it was authorized.*

The 2018 Decision Memo signed by Ranger Joseph Rechsteiner documented that "Nestlé's project purpose is to continue to operate and maintain the existing system to supply bottled drinking water for retail sale." Similarly, your most recent application explicitly described the purpose of the requested "Business Facilities" as being "to supply bottled drinking water for retail purposes."

Despite this proclaimed and documented purpose, BlueTriton's reporting shows that 94-98% of the total diverted monthly volume was delivered to the Arrowhead Springs Hotel property for undisclosed purposes, rather than for the purpose of supplying bottled drinking water as described in the permit and application. In fact, for months BlueTriton has indicated it has bottled none of the water taken from the SBNF.  This change of diversion and use of the water remains completely ahistoric, despite BlueTriton's contrary assertions. This volume increase from 4.5 million gallons in December of 2023 to 9.5 million gallons in May of 2024 represents a significant trend of substantial amounts of water used for unauthorized purposes. This increase represents significantly more water than has ever been delivered previously with seemingly no change of the uses of the Arrowhead property. As we have noted, the recipient property to our knowledge has no irrigated agriculture, no industrial uses, no residences, and no municipalities.  The hotel and conference facility on the property is not operating, and there is no explanation of where the millions of gallons of water per month are going.  As explained in prior correspondences, such an unprecedented volume of water must be explained in sufficient detail. Still, after several requests from the Forest Service and ample time to provide the requested information, BlueTriton failed to provide any explanation and asserted that responsibility lies with the Tribe. To be clear, BlueTriton is the current permit holder and applicant for the new permit. BlueTriton is therefore solely responsible for complying with the terms of the permit and also for providing information necessary for its application.

### 3.) *The holder must be in compliance with the terms and conditions of the authorization.*

BlueTriton's previous special use authorization FCD728503 stipulates that "Any change in a water facility, including a change in the ownership or beneficial use of water or location of use of water from a water facility, that is not expressly Authorized in this permit shall result in termination of the authorization for that water facility."

As discussed in point 2 above, there has been a change in both the beneficial use of water and the location of that use. This constitutes a violation of the current permit and basis for termination. 36 C.F.R. § 251.60. It also provides independent reason to deny BlueTriton's application.

For all of these reasons, I have decided to deny BlueTriton's application. This determination regarding the denial of your application is final and not subject to administrative appeal because your permit did not provide for renewal (36 CFR 214.5; compare 36 CFR 214.4(c)(5)).

Because your application has been denied, the previous authorization FCD728503 has terminated. (See paragraph I.C.). Termination of the permit is not subject to administrative appeal. (See paragraph VII.D. and 36 C.F.R. § 251.60.)

I am hereby notifying BlueTriton Brands, Inc. that all use of Forest System lands, including the operation and maintenance of a water collection/water transmission system on USFS lands, must stop immediately.

BlueTriton is required to complete the following:

1. Within seven (7) days of the date of this letter, take any necessary steps to stop use of the BlueTriton pipeline for water conveyance in Strawberry Canyon, by severing or blocking the pipe at each tunnel or borehole (1, 1A, 8, 7, 7A, 7B, 7C, 2, 3, 10, 11, 12), or other such means as to bypass all flow to the surface from each point of diversion. Provide a confirmation to me via email immediately following the completion of step 1. Include photo documentation with the statement.

2. Remove locks from all BlueTriton equipment on SBNF land. Alternatively, it will be sufficient to provide the USFS with copies of all keys. If this alternative is chosen, the BlueTriton will arrange to hand over keys on site. This step shall be completed within two (2) weeks of the date of this letter.

3. Prepare and submit a plan to remove its infrastructure from SBNF lands. The plan shall be submitted within twelve (12) weeks of the date of this letter and shall include a time frame for complete removal. Infrastructure to include in the removal plan:

    a. All stainless steel pipes and structural scaffolding installed after 1974.

    b. All valves, valve cages, and support structures.

    c. All electronic monitoring and power equipment

    d. Any discharge, bypass, and/or hydropower equipment

The plan should **not** include the removal of vault houses or any of the structures made of stone. BlueTriton shall not perform any infrastructure removal work until the USFS has approved the plan.

Please direct any questions or concerns directly to me, or to your permit administrator David Anderson.

Sincerely,


Michael Nobles
DISTRICT RANGER
San Bernardino National Forest