**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

BLUETRITON BRANDS, INC.,

     Plaintiff,

       v.

UNITED STATES FOREST SERVICE et
al.,

     Defendants.

                 Civil Action No.  24-2302 (JDB)

---

## MEMORANDUM OPINION AND ORDER

This case concerns the discretion of the United States Forest Service ("USFS") to grant special use permits that allow private parties to occupy and use federal land under certain conditions.   Plaintiff, the American bottled water company BlueTriton Brands, Inc. ("BlueTriton"), filed a simultaneous complaint and motion for a preliminary injunction alleging that the USFS's denial of BlueTriton's permit renewal application violated the Administrative Procedure Act.  Now before the Court is defendants' motion to transfer this matter to the United States District Court for the Central District of California.  For the reasons below, the Court will grant the motion to transfer.

## BACKGROUND

BlueTriton claims that its predecessors (collectively, "BlueTriton") began accessing and diverting water from sources within Strawberry Canyon, California prior to the establishment of that area as the San Bernardino National Forest ("SBNF").  See Mem. of Law in Supp. of Pl.'s Mot. for Prelim. Inj. [ECF No. 2-1] ("Mot. for PI") at 1–3.  After the establishment of the SBNF, BlueTriton installed a pipeline on SBNF land to transport water from the Strawberry Canyon water sources to a collection facility on private land.  See id. at 3, 24–25.  For decades, BlueTriton sought

1

and received the necessary permits from the USFS to occupy SBNF land and operate this pipeline. See id. at 9; see also 43 U.S.C. § 1761(a)(1) (authorizing the USFS to issue such permits). BlueTriton used the pipeline to divert water both for bottling and to deliver to the San Manuel Band of Mission Indians, which operates a hotel on property adjacent to the SBNF.  Mot. for PI at 3, 11.

That changed in 2023.  That year, the California State Water Resources Control Board ("SWRCB"), the state administrative agency responsible for adjudicating and awarding water rights in California, concluded a multi-year investigation into BlueTriton's California water rights and found that BlueTriton did not have the right to a significant portion of the water that it diverted from Strawberry Canyon.  See Cease & Desist Ord., State of Cal., Cal. Env't Prot. Agency SWRCB Ord. WR 2023-0042 (Sept. 19, 2023) [ECF No. 15-6] ("Cease & Desist Ord.") at 1–3, 90–91.  The SWRCB ordered BlueTriton to cease diverting water from certain locations in Strawberry Canyon except as necessary to fulfill its contract with the San Manuel Band—an exception not relevant here.  See id. at 91–93.

In light of this decision, the USFS, which was in the midst of processing BlueTriton's latest permit renewal application, then requested information from BlueTriton on how its requested use of SBNF land would comply with federal and state law.  Letter from Michael Nobles, Dist. Ranger, SBNF, to David Feckley, Dir. of Nat. Res., BlueTriton (Sept. 29, 2023) [ECF No. 2-15] ("Sept. 29, 2023 letter") at 1.  After several written exchanges, the USFS denied BlueTriton's renewal application in July 2024.  See Letter from Michael Nobles, Dist. Ranger, SBNF, to Louis Mixon, III, Senior Nat. Res. Manager, BlueTriton (July 26, 2024) [ECF No. 2-23] ("Notice") at 1.  The USFS stated that, among other reasons, BlueTriton had failed to provide sufficient information for the USFS to confirm that BlueTriton's occupancy and use of SBNF land would comply with

federal and state law.  See id. at 1–2.  The notice of denial required BlueTriton to immediately cease "all use of Forest System lands," including its pipeline, and "[p]repare and submit a plan to remove its infrastructure from SBNF lands" by mid-October 2024.  Id. at 3.  The USFS later amended one provision of the notice to allow BlueTriton to continue using its pipeline to divert a certain amount of water to the San Manuel Band through January 15, 2025.  See Letter from Danelle D. Harrison, Forest Supervisor, SBNF, to Louis Mixon, III, Senior Nat. Res. Manager, BlueTriton (Aug. 26, 2024) [ECF No. 27-1] ("Notice of Extension") at 1.

In August 2024, BlueTriton filed a complaint and motion for a preliminary injunction, contending that the USFS's notice of denial exceeded the USFS's statutory authority and was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), and would cause irreparable harm.  See Pl.'s Compl. for Decl. & Inj. Relief [ECF No. 1] ("Compl.") ¶¶ 24–27; Mot. for PI at 24–26.  After the parties fully briefed that motion, on August 28, the USFS and the five USFS employees sued in their official capacities (collectively, "the government") moved to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a).  Defs.' Mot. to Transfer Venue to the Central District of California [ECF No. 28] ("Mot.").  BlueTriton opposed, and defendants filed a reply.  See Pl. BlueTriton Brands' Opp'n to Defs.' Mot. to Transfer Venue to the Central District of California [ECF No. 29] ("Opp'n"); Defs.' Reply in Supp. of Mot. to Transfer Venue to the Central District of California [ECF No. 30] ("Reply").  The motion to transfer is now fully briefed and ripe for decision.

## **LEGAL STANDARD**

District courts may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  But that does not mean that a court may "transfer a case from a plaintiff's chosen

forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." W. Watersheds Project v. Pool, 942 F. Supp. 2d 93, 96 (D.D.C. 2013) (internal quotation marks omitted).  As a threshold matter, a court must first determine whether the case could have been brought in the transferee district, an inquiry that turns on the general venue statute.  See Stewart v. Azar, 308 F. Supp. 3d 239, 244 (D.D.C. 2018) (citing Van Dusen v. Barrack, 376 U.S. 612, 623 (1964)); see 28 U.S.C. § 1391.  If that condition is met, a court then undertakes an "individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).  For this analysis, a court balances a series of public and private interest factors to determine whether the interests of justice favor transfer.  See Stewart, 308 F. Supp. 3d at 244.  "The movant bears the burden of persuasion that transfer . . . is proper."  Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 356 (D.D.C. 2014).

## ANALYSIS

Where federal jurisdiction is not based solely on diversity and the defendant is an officer, employee, or agency of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in the action." § 1391(e)(1).  The parties and this Court agree that venue is proper in the Central District of California ("transferee district") because BlueTriton's APA claim involves defendants, real property, and events or omissions that are located or occurred in that district.  See Mot. at 3–4; Opp'n at 2.

Because venue is proper in the transferee district, the government must next demonstrate that both the public interest and private convenience factors favor transfer.  See W. Watersheds

Project, 942 F. Supp. 2d at 96–97 (citing Stewart Org., 487 U.S. at 30).  "The public interest factors are (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home."  Id. at 97 (internal quotation marks omitted).  "The private interest factors are (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof."  Id. (internal quotation marks omitted).

The government contends that the public and private interest factors favor transfer because "[t]he land at issue, the decision-makers, third parties with a vested interest in the outcome of this case, and the parties to previous litigation concerning BlueTriton's permits are all located in the Central District of California," plus the case has "no meaningful ties to the District of Columbia."  Mot. at 1.  BlueTriton argues that the factors favor retention because three of the six defendants reside in the District of Columbia, and the transferee district faces a backlog of cases such that it "offers little assurance of a swift review."  Opp'n at 1.  The Court concludes that both the public and private interest factors favor transfer.

## I.    Public Interest Factors

The first factor—the transferee court's familiarity with the governing laws and the pendency of related actions—favors transfer.  BlueTriton brings an APA claim, and "[j]udges in both districts are presumed to be equally familiar with the [APA]."  W. Watersheds Project, 942 F. Supp. 2d at 101; see also In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1174–75 (D.C. Cir. 1987).  But see Stewart, 308 F. Supp. 3d at 248 ("If anything, [D.D.C.] has more experience with APA cases, which would weigh against transfer.").  The government contends that BlueTriton's APA claim also requires consideration of California state water law, with which

the transferee district is more familiar.  See Mot. at 9; Reply at 3 ("Even a casual glance at the briefing to date reveals the entangled California water law issues.").  The Court agrees that this slightly favors transfer.  Although APA cases are generally decided on the administrative record, BlueTriton's complaint relies in part on allegations that the USFS's notice of denial violated BlueTriton's California state water rights.  See, e.g., Compl. ¶¶ 11–15, 21.  Although federal law underpins BlueTriton's claim, California state law is likely to arise to some degree.

The Court also agrees that the transferee district has a pending case that is sufficiently related, which further tips this factor in favor of transfer.  See First Am. Compl., Save Our Forest Ass'n v. Nobles, 5:24-cv-01336 (JGT-DTB) (C.D. Cal. Aug. 27, 2024) ("SOFA Compl."); see also Notice of Related Case [ECF No. 7] at 12, 222–51.  In the pending case, plaintiff Save Our Forest Association ("SOFA") contends that the USFS violated various federal laws, including the APA, by issuing earlier iterations of the same BlueTriton permit at issue here.  See SOFA Compl. ¶¶ 105–14.  BlueTriton argues that this case is insufficiently related because the prior USFS permits have different administrative records.  See Opp'n at 4.  This Court disagrees.  Cases need not be identical to favor transfer.  These cases share relevant facts (BlueTriton's asserted water rights and the impact of the SWRCB investigation on the USFS's permitting process), one key defendant (USFS officer Nobles), and claims (whether the USFS's permit decisions vis-à-vis BlueTriton violated the APA).  See, e.g., S. Utah Wilderness Ass'n v. Norton ("SUWA"), 315 F. Supp. 2d 82, 89 (D.D.C. 2004) (transferring oil and gas case where transferee district had pending cases involving either the same federal environmental laws or similar federal government oil and gas decisions); cf. Detroit Int'l Bridge Co. v. Gov't of Canada, 787 F. Supp. 2d 47, 53–54 (D.D.C. 2011) (concluding pending case in transferee district was not a factor favoring transfer because the cases had "sufficiently distinct" parties, facts, claims, and relief sought).

Moreover, the cases here actually seek contrasting relief such that handling them in the same district may prevent conflicting decisions and promote overall judicial economy. BlueTriton seeks vacation of the notice of denial and a permanent injunction preventing the USFS from "denying or otherwise unreasonably restricting [BlueTriton's] access to" the Strawberry Canyon water sources. Compl. at 10. SOFA, by contrast, seeks an order that the USFS both prevent BlueTriton from diverting water from Strawberry Canyon and order the removal of BlueTriton's infrastructure from SBNF land. SOFA Compl. at 35. These forms of relief cannot effectively coexist. Litigating the claims in the same district would promote judicial economy and may help prevent incompatible court orders. The first factor thus favors transfer.

The second factor—the relative congestion of each court's docket—is neutral. This factor can be "difficult to assess, because judicial statistics provide, at best, only a rough measure of the relative congestion of the dockets." Akinyode v. U.S. Dep't of Homeland Sec., Civ. A. No. 21-110 (JDB), 2021 WL 3021440, at *5 (D.D.C. July 16, 2021) (internal quotation marks omitted). The parties trade statistics that favor their respective positions. The government, contending this factor is neutral, cites to the relatively equal number of pending civil cases per active judgeship in each district. See Mot. at 9. BlueTriton points to the total and weighted filings per judgeship in each district, which are approximately double in the transferee district. See Opp'n at 5. This Court observes that as of June 30, 2024, the districts had similar numbers of total pending cases per filled authorized judgeship—504 in this District, as compared to 525 in the transferee district. U.S. Dist. Cts. Nat'l Jud. Caseload Profile (June 30, 2024), https://perma.cc/RK6H-3UHG ("2024 U.S. Court Statistics") at 2, 68. Yet none of these statistics demonstrate the "substantial congestion differences" that meaningfully impact the transfer inquiry. See Alaska Wilderness League v. Jewell, 99 F. Supp. 3d 112, 118 (D.D.C. 2015) (cleaned up); Nat'l Ass'n of Home Builders v. U.S.

EPA, 675 F. Supp. 2d 173, 178 (D.D.C. 2009) (more pending cases per judgeship is not evidence that one "court's docket is substantially more congested" than another); Stewart, 308 F. Supp. 3d at 248 (similar).

In arguing that the transferee district is more congested than this District, BlueTriton also emphasizes that the federal courts characterize the transferee district's two judicial vacancies (out of 28 judgeships) as "judicial emergencies."  See Opp'n at 4–5.  A "judicial emergency" is, as relevant here, a judicial vacancy in a district "where weighted filings are in excess of 600 per judgeship."[1]  But this argument misses the crux of the second factor, which is "the potential speed of disposition."  Huff v. Vilsack, Civ. A. No. 15-438 (KBJ), 2015 WL 13672465, at *4 (D.D.C. Sept. 14, 2015); see also Edwards v. Equifax Info. Servs., LLC, 313 F. Supp. 3d 618, 624 (E.D. Pa. 2018).  Here, despite its judicial emergency, the transferee district disposes of civil cases faster than this District.  See 2024 U.S. Court Statistics at 2, 68 (3.9 months compared to 5.6 months).[2]  The existence of a judicial emergency therefore does not change this factor's neutrality.

To further bolster its congestion argument, BlueTriton argues that transfer "threatens to essentially deprive BlueTriton of any opportunity to have its preliminary injunction motion decided before the Notice of Denial's requirements take full effect."  Opp'n at 6 (cleaned up).  BlueTriton invokes Stand Up for California! v. U.S. Dep't of Interior, 919 F. Supp. 2d 51 (D.D.C. 2013), but the situation here is far afield from that case.  In Stand Up, the court had mere days to decide the motion for a preliminary injunction before the alleged harm occurred.  See 919 F. Supp.

---

[1] Jud. Emergency Definition, U.S. Courts, https://perma.cc/Z5TK-RYQM.

[2] Another judge in this district concluded that two judicial emergency vacancies in the transferee district weighed against transfer.  See Stand Up for Cal.! v. U.S. Dep't of Interior, 919 F. Supp. 2d 51, 64 n.14 (D.D.C. 2013).  In that case, however, each vacancy had 1,141 weighted filings—nearly double the 666 in the transferee district here.  See id.; 2024 U.S. Court Statistics at 68; see also Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union, Civ. A. No. 20-6180 (FLW), 2021 WL 268176, at *8 (D.N.J. Jan. 27, 2021) (concluding judicial emergency favored transfer where transferor district had 39,167 pending cases and transferee had 5,193).

2d at 65.  There is no similar time crunch here.  The USFS has all but confirmed that it will not order BlueTriton to begin removing its infrastructure from the SBNF until January 15, 2025, at the earliest.  See Reply at 6–7 ("[I]t would be nonsensical for the Forest Service to order removal of BlueTriton's pipeline before the expiration of the extension for BlueTriton to make water deliveries using that pipeline."); Notice of Extension at 1.  Three months is a far cry from a handful of days.  And finally, unlike in Upjohn Co. v. Riahom Corp., Civ. A. No. 86-203 (CMW), 1986 WL 7515 (D. Del. June 25, 1986)—another case that BlueTriton invokes—this Court has not familiarized itself with the dispute by having "already ruled on two discovery-related motions." See id. at *2.  The second factor is therefore neutral.

The third and "arguably most important" public interest factor is the local interest in deciding local controversies at home.  Stewart, 308 F. Supp. 3d at 249 (internal quotation marks omitted).  "[C]ourts have a local interest in having localized controversies decided at home." Gyau v. Sessions, Civ. A. No. 18-407 (RCL), 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018) (internal quotation marks omitted).  "This rationale applies to controversies involving federal decisions that impact the local environment, and to controversies requiring judicial review of an administrative decision."  Sierra Club v. Flowers, 276 F. Supp. 2d 62, 70 (D.D.C. 2003).  This factor strongly favors transfer.

BlueTriton's underlying claim centers on the use of land and water in California, which "is a localized interest because its management directly touches local citizens."  SUWA, 315 F. Supp. 2d at 88; see, e.g., Gulf Restoration Network v. Jewell, 87 F. Supp. 3d 303, 316–17 (D.D.C. 2015). BlueTriton seeks relief that would permit its occupancy of California land and use of California water.  See Compl. ¶ 27.  That this directly touches California and her citizens is abundantly clear. See, e.g., Stewart, 308 F. Supp. 3d at 249–50 (collecting cases approving transfer where "local

federal-agency office made a decision involving local resources that are located entirely in a proposed transferee district").  For example, "[b]etween April 2015 and September 2017," the responsible California agency "received seven complaints . . . and a petition signed by 500 individuals" contending that BlueTriton "was diverting water without a valid basis of right, was unreasonably using water, was injuring public trust resources, and was not reporting or was incorrectly reporting its diversions."  Cease & Desist Ord. at 2; see also, e.g., Amicus Br. of SOFA, Inc. [ECF No. 19] at 18 (describing local environmental harms caused by BlueTriton's diversions).

BlueTriton's attempt to frame this case as an issue of national importance is unpersuasive. BlueTriton claims that this case "has significant implications for the Forest Service's approach to preexisting water rights," because its denial of BlueTriton's permit "reflects a fundamental deviation" from the USFS's prior practice of recognizing parties' state water rights.  See Opp'n at 7.  But the underlying issue is a narrow one: whether the USFS's decision on this application violated the APA.  To say that application of the APA renders a case one of national importance that outweighs the significant localized interests here would mean that "any challenge involving a federal law implemented by a federal agency could not be transferred elsewhere."  Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs ("PSC"), 893 F. Supp. 2d 49, 54–55 (D.D.C. 2012). This conclusion is squarely at odds with the long line of cases granting motions to transfer APA environmental cases from this District.  See, e.g., Flowers, 276 F. Supp. 2d at 71; see also Stewart, 308 F. Supp. 3d at 249–50 (collecting cases).

To put it plainly, BlueTriton's claim involves an application made in California for a permit to occupy federal land in California; how USFS officers in California adjudicated that application, including their consideration of a California state agency decision regarding California water

rights; and a decision that will affect California's environment—an issue on which Californians have expressed significant interest.  The third factor thus strongly favors transfer.

Taken together, the public interest factors strongly favor transfer.

## II.    Private Convenience Factors

The first two private convenience factors—the parties' choices of forum—favor transfer. "Courts ordinarily accord significant deference to a plaintiff's choice of forum," but that deference is "lessened if a plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter."  W. Watersheds Project, 942 F. Supp. 3d at 97 (cleaned up).  "[T]he mere fact that a case concerns the application of a federal statute by a federal agency does not provide" such a meaningful tie.  Id. at 98.  BlueTriton must instead "demonstrate some 'substantial personalized involvement by a member of the Washington, D.C.' agency before the court can conclude that there are meaningful ties to the District of Columbia."  Id. (quoting S. Utah Wilderness All. v. Lewis, 845 F. Supp. 2d 231, 235 (D.D.C. 2012)).

BlueTriton fails to proffer a significant nexus to this District.  BlueTriton's only factual connection to the District is that three defendants—individuals sued in their official USFS capacities—reside here.  See Opp'n at 1.  BlueTriton does not allege that any of those defendants participated in the decision-making process on BlueTriton's permit, nor does BlueTriton posit that any action, even insignificant, occurred in the District.  BlueTriton seems to argue that its claim has a sufficient nexus to the District of Columbia because of the "Court's relative aptitude in applying the APA and the desire to avoid delay during a judicial emergency," Opp'n at 9, but this argument conflates the public and private interest analyses.  Furthermore, BlueTriton is not a resident of this District; it is a Connecticut-based corporation with material operations occurring in California.  See Opp'n at 10; Compl. ¶¶ 10–18.  Where the plaintiff does not reside in the

transferor forum, "[t]he amount of deference" that a court affords its choice of forum "is diminished." Gulf Restoration Network, 87 F. Supp. 3d at 311.

The government's choice of forum, on the other hand, merits some deference. A defendant's choice of forum is not "ordinarily entitled to deference" unless it "establish[es] that the added convenience and justice of litigating in [its] chosen forum overcomes the slight deference given to Plaintiff's choice." Tower Lab'ys, Ltd. v. Lush Cosms. Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018). In APA cases, "a defendant's choice of forum deserves some weight where the harm from a federal agency's decision is felt most directly in the transferee district." Gulf Restoration Network, 87 F. Supp. 3d at 313 (internal quotation marks omitted). The government seeks to transfer the claim from a district with no significant nexus to the district where the challenged permit decision occurred, BlueTriton's relevant operations occur, the land (and water) in question is located, and the alleged harms will be felt most strongly. According to BlueTriton's own filings, one of the principal harms from the USFS's notice of denial—the removal of BlueTriton's 23,000-foot pipeline and other infrastructure from the SBNF—will occur in the transferee district. See Mot. for PI at 24–25. And if the notice of denial is enjoined, as BlueTriton requests, the alleged environmental harm to the SBNF and southern California ecosystem "would be most particularly felt in [California]" such that "the courts of [California] would have a clear interest in resolving the dispute." SUWA, 315 F. Supp. 2d at 89; see Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 17 (D.D.C. 1996). Hence, there is a "sharp contrast" between the "lack of meaningful ties between the controversy and the District of Columbia" and "the significant ties" between the controversy and the transferee district. See Flowers, 276 F. Supp. 2d at 68. Private convenience factors one and two therefore strongly favor transfer.

The third private convenience factor, which considers where the claim arose, also favors transfer.  In APA cases, the claim typically "arises where the decisionmaking process occurred." McAfee, LLC v. U.S.C.I.S., Civ. A. No. 19-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (quoting Gyau, 2018 WL 4964502, at *1).  "Where the decision-making process was concentrated in a particular city or state, courts have found this factor to weigh heavily in the transfer analysis."  Gulf Restoration Network, 87 F. Supp. 3d at 313.  Here, USFS's decision-making process occurred entirely in the transferee district.  See Mot. at 7.  All cited correspondence from the USFS regarding the challenged permit was sent from the USFS's SBNF office, and the USFS officers who adjudicated the permit and signed the correspondence (including the notice of denial and notice of extension) reside in the transferee district.[3]  BlueTriton's claim thus arose in the transferee district, and this factor favors transfer—points that BlueTriton smartly does not contest.  See Opp'n at 10.

The remaining private convenience factors, factors four through six, all relate to the convenience of the litigation.  In APA cases, these factors are generally neutral or slightly favor transfer.  See, e.g., Defs. of Wildlife v. Jewell, 74 F. Supp. 3d 77, 85 (D.D.C. 2014).  This case is no exception.  For the fourth factor, the convenience of the parties, this District and the transferee district are equally convenient.  BlueTriton is a Connecticut company not based in either district, and some defendants reside in each district.  See Opp'n at 10; Mot. at 7.  Although the government argues that the transferee district is more convenient for the two parties that filed amicus briefs and may seek to intervene (the SWRCB and SOFA), Mot. at 8, this Court agrees with BlueTriton that speculative intervention does not move the needle.  Neither does the fifth factor—the location

___

[3] See Sept. 29, 2023 letter at 1; Letter from Michael Nobles, Dist. Ranger, SBNF, to Louis Mixon, III, Senior Nat. Res. Manager, BlueTriton ("Letter from Nobles to Mixon") (Mar. 1, 2024) [ECF No. 2-16] at 1; Letter from Nobles to Mixon (Apr. 24, 2024) [ECF No. 2-18] at 1; Letter from Nobles to Mixon (May 24, 2024) [ECF No. 2-20] at 1; Letter from Nobles to Mixon (June 21, 2024) [ECF No. 2-22] at 1; Notice at 1; Notice of Extension at 1.

of witnesses—because courts generally determine APA cases on the administrative record.  <u>See</u>, <u>e.g.</u>, <u>Flowers</u>, 276 F. Supp. 2d at 69.  Finally, the sixth factor, the location of the administrative record, carries "some weight" in favor of transfer because the administrative record here is in the transferee district.  <u>See</u> <u>id.</u>; Mot. at 8.

Taken together, the private factors thus strongly favor transfer.

## CONCLUSION

BlueTriton challenges a decision made by a USFS official in California about water rights and environmental regulation in California—an APA challenge with overwhelmingly local effects. As a result, California and her citizens have a substantial interest in the resolution of this case. Cases that involve water rights and environmental regulation "should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit'" are located.  <u>Trout Unlimited</u>, 944 F. Supp. at 19–20 (quoting <u>Adams v. Bell</u>, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)).  Because venue is proper in the transferee district and both the public interest and private convenience factors strongly favor transfer, the Court will grant defendants' motion to transfer the case.

\*      \*      \*

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [28] defendants' motion to transfer is **GRANTED;** it is further

**ORDERED** that the Clerk of the Court shall transfer this action to the United States District Court for the Central District of California.

**SO ORDERED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>October 23, 2024</u>